**James AGAN, Petitioner–Appellant,**

**v.**

**Richard L. DUGGER, Robert Butterworth, Respondents–Appellees.**

**No. 87–3448.**

United States Court of Appeals, Eleventh Circuit.

Dec. 30, 1987.
Rehearing and Rehearing En Banc Denied Feb. 5, 1988.

Mark E. Olive, Asst. Capital Collateral Representative, Tallahassee, Fla., for petitioner-appellant.

Robert A. Butterworth, Atty. Gen., State of Fla., Mark C. Menser, Asst. Atty. Gen., Dept. of Legal Affairs, Carolyn Shurkowski, Tallahassee, Fla., for respondents-appellees.

Before FAY, VANCE and ANDERSON, Circuit Judges.

FAY, Circuit Judge:

Death row inmate James Agan appeals the denial of his petition for writ of habeas corpus. We find that there should have been an evidentiary hearing on Agan's claims of incompetence and of ineffectiveness of counsel, and we remand this case for a hearing on these issues.

## THE NEED FOR AN EVIDENTIARY HEARING

█ Case law clearly establishes that [w]here the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court.... [A] federal evidentiary hearing is required unless the state court trier of fact has after a full hearing reliably found the relevant facts.

*Townsend v. Sain,* 372 U.S. 293, 312–13, 83 S.Ct. 745, 757; 9 L.Ed.2d 770 (1963) (footnote omitted); *see Guice v. Fortenberry,* 661 F.2d 496 (Former 5th Cir.1981) (en banc).[1] In a case such as this, where there was no hearing, the federal court must decide whether the petitioner should have received one. An evidentiary hearing is necessary whenever a habeas petition alleges facts that, if true, establish his or her right to relief. The court must therefore accept all of the petitioner's alleged facts

as true and determine whether the petitioner has set forth a valid claim. *See Porter v. Wainwright,* 805 F.2d 930, 933 (11th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 3195, 96 L.Ed.2d 682, *cert. denied,* — U.S. —, 107 S.Ct. 3196, 96 L.Ed.2d 683 (1987); *Smith v. Wainwright,* 777 F.2d 609, 615 (11th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986).

## INCOMPETENCE

█ The test for determining competence to stand trial is " 'whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' " *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (per curiam) (quoting the Solicitor General). Because the trial of a person who is incompetent would violate that individual's due process rights, *Drope v. Missouri,* 420 U.S. 162, 171–72, 95 S.Ct. 896, 903–04, 43 L.Ed. 2d 103 (1975), courts must conduct a hearing whenever there is a "bona fide doubt" regarding that defendant's competence. *Pate v. Robinson,* 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966); *see Adams v. Wainwright,* 764 F.2d 1356, 1360 (11th Cir.1985) (demanding "real, substantial, legitimate doubt as to [petitioner's] mental capacity"), *cert. denied,* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986); *Strickland v. Francis,* 738 F.2d 1542, 1543–44 (11th Cir.1984). In this case, Agan points to both his highly irregular conduct during his grand jury and sentencing hearings and his long history of mental problems to support his incompetence claim. We find that the facts presented clearly raise a bona fide doubt regarding Agan's competence to stand trial.

In September of 1980, Florida State Prison officials found Dana DeWitt, an inmate of the jail, dead in his jail cell. Following

---

1. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982) makes this Former Fifth Circuit case binding on our circuit. *See also Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc) (adopting Fifth Circuit decisions issued prior to October 1, 1981 as precedent in this circuit).

DeWitt's death, Agan, an inmate of the prison who was not a suspect in the case, confessed to the crime, re-confessed to a grand jury and to the sentencing judge, and waived all of his constitutional rights regarding this crime. He told the grand jury and the sentencing judge that he killed DeWitt because of a dispute that the two men had over money, that he had planned the murder for over two years, and that he regretted that DeWitt had not died a more painful death. He informed the grand jury and the sentencing judge that he was certain that, by confessing, he had almost guaranteed his receipt of a life sentence instead of a death sentence, and further announced that once he returned to prison, he would find and murder DeWitt's "partner."[2] Agan's self-proclaimed strategy did not work; the judge, relying on statutory aggravating factors and also noting Agan's lack of remorse, sentenced Agan to death.

We do not find it surprising that Agan's conduct failed to endear him to the sentencing judge. Indeed, Agan's behavior, at a minimum, is bizarre and misguided and raises serious questions about Agan's reasoning ability. We need not decide whether this in itself raises a real doubt regarding Agan's competence, however, because Agan had a history of mental problems dating back to his youth. In the 1940's and 1950's, the army discharged Agan three times; a 1945 report cites Agan's mental deficiency and his instability as the reasons for the first discharge. In 1953, Agan went to jail for robbery. Three prison psychiatrists concluded that Agan was psychotic. He therefore went to the state hospital where he received electric shock therapy. In 1974, after Agan's release from the hospital, a court in Tampa, Florida convicted Agan of murder.[3] Between 1974 and 1980, the year Agan confessed to DeWitt's murder, Agan continued to suffer from mental health problems. He tried to hang himself in 1975; in 1978, he asked to be locked up because he felt that he was going crazy. Clinical reports outline Agan's hallucinations and diagnose him as a schizophrenic. He received medication to control his problems.

The State argues that none of this raises any serious questions regarding Agan's competence. The State claims that because the state hospital released Agan, he presumably has recovered from the psychosis from which he suffered at the time. The medication Agan received "controlled" his schizophrenia. Finally, the State asserts that Agan's army record is too remote in time to be considered. Therefore, the State urges us to affirm the district court's holding that "[p]etitioner has not presented clear and convincing evidence to create a real, substantial, and legitimate doubt as to his mental competency to stand trial." *Agan v. Dugger*, No. 87–489–Civ–J–16 (M.D.Fla. filed June 24, 1987).

The State and the district court may in fact be correct that Agan was competent to stand trial. However, we cannot agree that Agan's evidence raises no serious doubts regarding his mental stability in 1980. The record on its face is inconclusive; but, Agan's allegations do raise an issue regarding competency. An evidentiary hearing is essential in order to resolve this issue. Since no hearing was held in the state courts, such must be completed in the federal district court.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Agan also demands a hearing based on ineffective assistance of counsel. Ineffective assistance of counsel claims must satisfy a two-part test: "First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see*

---

**2.** Agan stated that DeWitt's partner helped DeWitt steal $120 from him. Agan refused to reveal the identity of the partner.

**3.** Agan pled guilty to first degree murder in 1974 and received the death sentence. He was able to get the death sentence reduced on appeal. The State argues that, in this case, Agan pled guilty believing that this would guarantee the same result.

*Smith v. Wainwright,* 777 F.2d 609, 616 (11th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986).

Two attorneys represented Agan during the pre-sentencing and sentencing period. First, John Stinson served as Agan's lawyer. Due to personal difficulties between Stinson and Agan,[4] Stinson withdrew from this position. The court then appointed Mack Futch to represent Agan. Futch was Agan's attorney for both the plea and sentencing phases of the case.

The record indicates that neither attorney spent much time on Agan's case. Futch, who represented Agan at crucial phases of his case, apparently spent only 15.25 hours on the case.[5] He never spoke with Stinson to familiarize himself with Agan's case; he did no legal research; and he interviewed only one witness in addition to Agan and the State attorney and investigator. Futch did not even attempt to develop any defenses that might have helped his client. Most significantly, neither attorney requested a competency hearing. Both attorneys had access to Agan's "inmate jacket," which contained Agan's medical record. Apparently, Futch actually examined this jacket. A review of Agan's long history of mental problems should have prompted Agan's attorneys to question Agan's competence. In addition, Agan's self-defeating behavior should also have alerted them to the possibility that Agan was incompetent to render his guilty plea.

Agan claims that the ineffectiveness of counsel prejudiced his case. He argues that he is innocent and that he pled guilty due to his incompetence and to the fear of violence at the hands of the actual killer. If his lawyers had investigated, he contends, they would have realized this and been able to develop an adequate defense. Agan also asserts that his attorneys did not counsel him properly regarding his guilty plea. Although they both advised Agan not to plead guilty, neither fully explained the consequences to him. Had he understood the possible ramifications, he states, he would have behaved differently.[6] Finally, Agan claims that he should have been declared incompetent. Then, he would have been unable to plead guilty and receive the death sentence.

As the State correctly notes, there are many facts that could explain the conduct of Agan's lawyers. For example, Agan himself clearly wanted to plead guilty, and he apparently thwarted his attorneys' efforts to stop him. He may also have prevented them from preparing a defense.[7] In addition, the lawyers may have made a strategic decision not to challenge Agan's competence, based on a reasonable determination that Agan was competent. None of this is clear from the record, however, and an evidentiary hearing will have to be held to answer these questions as well. Since no hearing was held in the state courts, such must be completed in the federal district court.

## OTHER ISSUES

Agan also raises several other issues. He argues that his incompetence and his lack of understanding concerning the potential consequences of his guilty plea render that plea ineffective. Agan contends that for the same reasons it is unconstitutional to rely on his confessions or his guilty plea to convict and sentence him. We feel that these arguments are subsumed by Agan's claims regarding compe-

---

4. Agan, angry that Stinson advised him to abandon his plan to plead guilty, wrote Stinson a harshly critical letter.

5. This is the number of hours Futch claimed in his request for counsel fees.

6. The Supreme Court has held that the two-part test articulated in *Strickland* applies to cases challenging guilty pleas based on ineffectiveness of counsel. To show prejudice in these cases, the defendant must establish with "reasonable probability" that he or she would not have entered a guilty plea had counsel been effective. *Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *McCoy v. Wainwright,* 804 F.2d 1196, 1198 (11th Cir.1986) (per curiam).

7. Agan unquestionably stuck to his strategy despite opposition from his attorneys, and tried to prevent Futch from presenting mitigating evidence to the sentencing judge.

tency and effectiveness of counsel. Agan's other allegations—concerning prosecutorial misconduct and the constitutionality of the sentencing proceeding—simply have no merit.

## CONCLUSION

Because there was no hearing, the record before us is completely inadequate. We are, therefore, unable to effectively evaluate the claims raised by Agan. *See Clark v. Blackburn,* 619 F.2d 431, 434 (5th Cir. 1980) (per curiam). We can only determine that Agan's allegations, if true, would warrant relief; therefore, we remand for the evidentiary hearing he should have had long ago.

In conclusion, we acknowledge once again the relationship between federal and state courts. Congress and the United States Supreme Court have spelled out the obligations of each. In cases such as this one, where the need for a hearing is so clear, we are disappointed that the State prolongs the legal process by steadfastly refusing to recognize the obvious. We are also perplexed that the State would not prefer to resolve these issues in the state courts thus simplifying any review by federal courts. *See* 28 U.S.C. § 2254(d) (1982) (presumption of correctness). We are aware that when our court remands cases for evidentiary hearings the entire process becomes longer and more complicated. *See, e.g., Slicker v. Wainwright,* 809 F.2d 768 (11th Cir.1987); *McCoy v. Wainwright,* 804 F.2d 1196 (11th Cir.1986) (per curiam); *Clark v. Blackburn,* 619 F.2d 431 (5th Cir. 1980) (per curiam). These problems could be avoided if defendants alleging legally sufficient claims were granted timely hearings in the first instance.

REMANDED for an evidentiary hearing.