**Judy A. BUENOANO, Petitioner–Appellant,**

v.

**Harry K. SINGLETARY, Respondent–Appellee.**

No. 90–3525.

United States Court of Appeals, Eleventh Circuit.

June 4, 1992.

Billy H. Nolas, Tallahassee, Fla., Julie D. Naylor, Ocala, Fla., for petitioner-appellant.

Margene A. Roper, Asst. Atty. Gen., Dept. of Legal Affairs, Daytona Beach, Fla., for respondent-appellee.

Before TJOFLAT, Chief Judge, KRAVITCH and COX, Circuit Judges.

COX, Circuit Judge:

Judy A. Buenoano was indicted in August 1984 for the 1971 murder of her husband, James E. Goodyear. She was convicted of first degree murder in November 1985 and subsequently sentenced to death. This appeal arises out of her first petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied her petition. Because we conclude that a further evidentiary hearing is required, we remand for that purpose.

## I. FACTS AND PROCEDURAL HISTORY

In June 1971, Buenoano's husband, James E. Goodyear, returned to Orlando, Florida from a tour of duty in South Vietnam. Almost immediately following his return, Goodyear began experiencing weakness, nausea, diarrhea, and vomiting. When hospitalized on September 13, 1971, Goodyear reported to Dr. R.C. Auchenbach that he had been suffering from these symptoms for two weeks. Dr. Auchenbach was unable to determine the cause of Goodyear's condition, which continued to deteriorate. On September 16, 1971, Goodyear died as a result of cardiovascular collapse and renal failure.

At the time of Goodyear's death, no toxicological assays were performed because there was no reason to suspect toxic poisoning. However, Goodyear's body was exhumed in 1984. Dr. Leonard Bednarzyck analyzed the tissues of the body and determined that arsenic levels in the liver, kidneys, hair, and nails were indicative of chronic and acute exposure to arsenic. Buenoano was indicted for Goodyear's murder in August 1984.

At Buenoano's trial, Dr. Thomas Hegert, the Orange County Medical Examiner who performed the autopsy in 1984, testified that Goodyear's death was the result of long term arsenic poisoning. Dr. Auchenbach also testified that the symptoms exhibited by Goodyear were consistent with arsenic poisoning and that Goodyear could have died as a result of acute arsenic toxication.

In addition to the medical evidence, the prosecution offered the testimony of Debra Sims, who was living with Buenoano and Goodyear at the time of Goodyear's death. Sims testified that Goodyear grew progressively ill following his return and that she had witnessed him suffer a severe hallucination. The State also introduced the testimony of Constance Lang and Mary Beverly Owens. Lang testified that Buenoano had joked on several occasions about lacing her husband's food with arsenic. Owens testified that after hearing an upsetting phone call between Owens and her husband, Buenoano suggested that Owens take out more life insurance on her husband and then poison him with arsenic that could be bought at the grocery store. Owens and Lodell Morris also testified that Buenoano admitted killing Goodyear. Following Goodyear's death, Buenoano collected $33,000 in life insurance proceeds and $62,000 in indemnity compensation from the Veteran's Administration.

Evidence at trial also included testimony that following Goodyear's death, Buenoano lived with Bobby Joe Morris. It was revealed that Buenoano held herself out as Morris's wife to buy life insurance on his life. Morris died after exhibiting the same symptoms that Goodyear had suffered years before. Morris's remains were also exhumed in 1984 and toxicological studies revealed acute arsenic poisoning.

Following Morris's death, Buenoano lived with John Gentry. After contracting a cold, Gentry began taking Vicon C vitamin capsules that Buenoano gave him. Gentry began suffering convulsions, nausea and vomiting. He checked into the hospital and soon recovered. Upon returning home Gentry began taking the Vicon C again and again began suffering the same symptoms. Gentry had the capsules analyzed; the analysis revealed that the capsules contained paraformaldehyde, a class III poison.

The evidence further showed that Buenoano collected approximately $23,000 in life insurance following Morris's death and that she held a $510,000 life insurance policy on Gentry's life.

On November 1, 1985, a jury found Buenoano guilty of the first degree murder of Goodyear. The jury subsequently recommended a sentence of death by a vote of 10 to 2. The trial judge found the existence of four aggravating circumstances: (1) Buenoano had been convicted previously of a capital felony or of a felony involving the use or threat of violence to the person; (2) the murder was committed for pecuniary gain; (3) the murder was especially heinous, atrocious, and cruel; and (4) the murder was committed in a cold, calculated and premeditated manner. *See* Fla.Stat.Ann. § 921.141(5) (West 1985). The court found no mitigating circumstances and accordingly imposed the death penalty.

The Supreme Court of Florida upheld Buenoano's conviction and the sentence on direct appeal. *Buenoano v. State*, 527 So.2d 194 (Fla.1988). The Governor of Florida signed a death warrant on November 9, 1989. On December 21, 1989, Buenoano filed in the trial court a motion to vacate the judgment and sentence pursuant to Fla.R.Crim.P. 3.850; it was summarily denied. Also, on December 21, 1989, Buenoano filed a petition for a writ of habeas corpus in the Supreme Court of Florida and requested a stay of execution. On January 24, 1990, the Supreme Court of Florida stayed the execution scheduled for January 25, 1990.

Buenoano appealed the trial court's summary denial of her Fla.R.Crim.P. 3.850 motion for post-conviction relief. This appeal was consolidated with her separate habeas petition. The Supreme Court of Florida upheld the trial court's denial of post-conviction relief and denied her petition for a writ of habeas corpus. *Buenoano v. Dugger*, 559 So.2d 1116 (Fla.1990). On May 17, 1990 the Governor signed a second death warrant, scheduling execution for June 19, 1990.

On June 5, 1990, Buenoano filed an emergency motion to vacate her judgment and sentence, and consolidated request for leave to amend and that execution be stayed to allow her to fully present her motion for relief to the trial court. In this motion, Buenoano claimed that death by electrocution in Florida constitutes cruel and unusual punishment. The trial court denied relief on June 12, 1990 and denied a motion for rehearing on June 15, 1990. The Supreme Court of Florida affirmed the trial court's decision on June 20, 1990. *Buenoano v. State*, 565 So.2d 309 (Fla. 1990).

The next day, June 21, 1990, Buenoano filed this, her first, 28 U.S.C. § 2254 petition in the United States District Court. The district court held a limited evidentiary hearing on June 21 and 22 and on June 22 entered judgment denying all relief requested. Buenoano appeals, asserting that the district court failed to afford her a full and fair evidentiary hearing on certain claims and erred in denying relief on other claims.

Buenoano raises a number of issues on this appeal. She contends: (1) that the district court failed to give her a full and fair evidentiary hearing on her claims; (2) that she was denied the effective assist-

ance of counsel at the sentencing phase of her trial due to her attorney's failure to investigate, discover and present mitigating evidence concerning her background and mental health; (3) that she was denied effective assistance of counsel at both phases of her trial and on direct appeal because her counsel had a conflict of interest arising from a book and movie rights contract concerning her case; (4) that she was denied her Fifth, Sixth, Eighth, and Fourteenth Amendment rights due to the trial court's failure to instruct the jury on the lesser included offense of premeditated murder and by her counsel's and the court's failure to give her a choice between waiving the expired statute of limitations and having the benefit of the lesser included offense instructions or asserting the statute of limitations on the lesser included offenses; (5) that the 1973 version of Florida's death penalty statute, Fla.Stat.Ann. 775.082, was unconstitutionally applied to this case where the offense of conviction occurred in 1971; (6) that her right to a reliable capital sentencing proceeding was violated by the state's introduction of victim impact information and unrebuttable hearsay testimony; (7) that her appellate counsel failed to render effective assistance by his failure to urge a claim of error under *Richardson v. State*, 246 So.2d 771 (Fla.1971), because the state called a surprise expert witness which prejudiced her defense; and (8) that the trial court's penalty phase instructions and the prosecutor's argument unconstitutionally shifted the burden to Buenoano to prove that death was not appropriate, and that the trial court unduly limited full consideration of mitigating circumstances to those which outweighed aggravating circumstances.

We conclude that Buenoano is entitled to a further evidentiary hearing on two of her claims—claim (2), the claim that she was denied the effective assistance of counsel at the penalty phase of her trial and claim (3), the claim that she was denied the effective assistance of counsel at trial and on direct appeal because her attorney was burdened by a conflict of interest. We therefore vacate the denial of relief on these claims and remand the case to the district

court for the limited purpose of enabling that court to conduct an evidentiary hearing. We retain jurisdiction of this appeal, and in this opinion only address the necessity for a further evidentiary hearing.

## II.  CONTENTIONS OF THE PARTIES

Buenoano argues that an evidentiary hearing was required; that the hearing held was highly restrictive and less than full and fair; and that the case should be remanded to the district court to enable her to present evidence in support of the subject claims. The State argues that the district court held a complete and adequate evidentiary hearing on the claims in question and resolved the facts against Buenoano. Alternatively, the State argues that Buenoano was not prejudiced by any deficiency in her counsel's performance at the penalty phase and that no evidentiary hearing was required on the subject claims.

## III.  DISCUSSION

■ No evidentiary hearing was held in state post-conviction proceedings. An evidentiary hearing in the district court is therefore necessary if Buenoano's petition alleges facts that, if true, establish a right to relief. *Agan v. Dugger*, 835 F.2d 1337, 1338 (11th Cir.1987), *cert. denied*, 487 U.S. 1205, 108 S.Ct. 2846, 101 L.Ed.2d 884 (1988); *see also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992).

We must first determine whether the petition in this case alleges facts that, if true, establish a right to relief. In making that inquiry we will consider evidentiary proffers made by Buenoano's counsel. We do not find that the court required a proffer, but Buenoano's counsel voluntarily made proffers from time to time so we shall consider these proffers together with the allegations of the petition.

If we determine that an evidentiary hearing was required on the subject claims, we must then determine whether the hearing held was adequate.

A. *Ineffective Assistance of Counsel—Penalty Phase—The Allegations and the Proffers*

█ Buenoano alleges ineffective assistance of counsel during the penalty phase of her trial, based on several purported errors or omissions committed by her trial counsel. In order to establish a claim for ineffective assistance of counsel, Buenoano must satisfy the two prong test of *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See also Smith v. Wainwright,* 741 F.2d 1248, 1254 (11th Cir.1984), *cert. denied,* 470 U.S. 1087, 105 S.Ct. 1853, 85 L.Ed.2d 150 (1985); and *Jarrell v. Balkcom,* 735 F.2d 1242, 1246 (11th Cir.1984), *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985). Under *Strickland,* the defendant must first show that her attorney failed to render "reasonably effective assistance" or that the attorney's performance was deficient. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Secondly, the defendant must show that this performance prejudiced her defense. *Id.*

█ In her petition for a writ of habeas corpus, Buenoano alleges that Johnston was ineffective during the penalty phase of her trial because "a wealth of significant evidence which was available and which should have been presented was either never presented at all or was inadequately presented." Buenoano also claims that this lack of effort may have been related to the book and movie contract entered into by her attorney James Johnston, his wife, and Buenoano. She alleges that Johnston failed to investigate, discover, and present mitigating evidence concerning her background and mental health. Specifically, Buenoano alleges in her petition that she suffered an impoverished childhood during which she was not only bounced from foster home to foster home because of her mother's death but that she was abused by several of her foster parents. In support of her allegations that Johnston did not adequately investigate her background, Buenoano proffered the affidavits of several family members.

Buenoano's brother, Gerald Welty, states in his affidavit that Johnston contacted him a "couple of times" but asked only for the names of Buenoano's immediate family members and never inquired into her background or family history. Gerald states that their mother was hospitalized for prolonged periods of time with tuberculosis, that she died when Buenoano was only three or four years old, and that their father was hospitalized with injuries he received during World War II. As a result of these factors, Gerald declares, Buenoano was separated from her siblings and moved around among families during her childhood.

Buenoano's father, Jessie Welty, states in his affidavit that he was never contacted by Johnston. Jessie declares that he was constantly ill and/or hospitalized during Buenoano's childhood. He relates that they were very poor, and that Buenoano never had a "real" family life. Jessie's wife's affidavit corroborates Jessie's affidavit.

In her affidavit, Buenoano's cousin, Jean Eaton, declares that Buenoano's childhood was horrible. She states that during one period of time, Buenoano's family lived in a lean-to because Jessie had deserted the family. Eaton also relates that she once overheard her parents talking about how Buenoano was sexually abused. Eaton further states that she was not contacted by Johnston. Eaton's testimony allegedly would be corroborated by Gail Schram, another of Buenoano's cousins.

Buenoano further alleges, in her petition, that once her family broke up, she lived with a series of families. During one period of time she lived with the Cross family in Temple, Texas. She alleges that the family paid her father $500 to have her live with them and that she was beaten with a rubber hose by the family. Buenoano also asserts in her petition that she was adopted by the Pursely family and that she was sexually and mentally abused by her adoptive mother.

In addition to the factual allegations concerning her family history and background, Buenoano asserts that there were numer-

ous red flags alerting Johnston to the need for psychiatric evaluations that he never ordered. Her petition asserts that Johnston knew she had grandiose delusions. In fact, during the hearing held by the district court, Johnston testified that he knew Buenoano told people she had a Ph.D. in psychology, was working on her M.D. degree as well as numerous other advanced degrees when, in fact, she wasn't.

Buenoano argues that the presence of mental health mitigating factors is confirmed by several psychiatrists. Dr. Pat Fleming performed a psychological evaluation of Buenoano, but was not allowed to testify during the district court's evidentiary hearing. Buenoano alleges that Dr. Fleming would have testified that Buenoano showed signs of paranoid schizophrenia, and organic brain damage; that Buenoano's background and childhood caused psychological problems which when combined with her cerebral dysfunction significantly disrupted her thought processes; and that Buenoano met the criteria for Organic Personality Syndrome evidenced by persistent personality disturbance, recurrent outbursts of aggression or rage, impaired social judgment, and paranoia. Buenoano further alleges that these findings were corroborated by the State's own psychological evaluation of Buenoano following her incarceration and by the findings of Dr. Robert Phillips, who raised the possibility that severe head trauma during her childhood could have caused brain damage.

Finally, Buenoano asserts in her petition that Johnston spent an inadequate amount of time preparing Dr. Michael Radelet for his testimony during the penalty phase of her trial. Given adequate preparation, Buenoano alleges, Dr. Radelet could have testified more effectively in her defense. Instead, she claims, Dr. Radelet was prepared for the first and only time over a lunch break during the penalty phase of the trial.

We hold that the allegations of Buenoano's petition, amplified by these proffers, state a claim for ineffective assistance of counsel during the penalty phase of her trial that requires an evidentiary hearing.

*See e.g. Porter v. Wainwright,* 805 F.2d 930 (11th Cir.1986), *cert. denied,* 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987); *Wiley v. Wainwright,* 709 F.2d 1412 (11th Cir.1983).

### B. *The Conflict of Interest—The Allegations and the Proffers*

■ Buenoano alleges that Johnston was burdened by a conflict of interest arising out of a book and movie contract entered into by Johnston, his wife, and Buenoano. She claims that this conflict caused Johnston to be ineffective during both phases of her trial and on direct appeal. Her petition alleges that the contract provided that Johnston would be paid the first $250,000 received by Buenoano from any publication, including books or movies, about Buenoano or her case and that Johnston had the right to "reject, accept and negotiate on [her] behalf any offers and contracts concerning these rights." The contract was signed after Buenoano was convicted, but during the penalty phase of the trial. Although the district court did hold a hearing on this issue, we conclude that the hearing was too restrictive.

■ In *Strickland v. Washington,* the Supreme Court recognized counsel's duty of loyalty to the client to avoid any conflict of interest. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065. When a claim of ineffective assistance of counsel is based on a conflict of interest, the prejudice prong of *Strickland* is relaxed if an actual conflict is shown. If an actual conflict of interest exists, the defendant need only show that it adversely affected her attorney's performance, *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980), rather than having to prove prejudice. However, a "mere possibility of conflict of interest does not rise to the level of a Sixth Amendment violation." *Smith v. White,* 815 F.2d 1401, 1404 (11th Cir.), *cert. denied,* 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Here, Buenoano alleges that the conflict of interest affected not only Johnston's investigation and presentation of mitigating evidence at the sentencing phase, as discussed in Section III(A)

above, but also his performance during the guilt/innocence phase of her trial and on direct appeal.

We hold that Buenoano's allegations are sufficient to warrant a full evidentiary hearing on the claim that her attorney was burdened by a conflict of interest that adversely affected her representation during both phases of her trial and on direct appeal.

### C. *The Nature of the Evidentiary Hearing*

■ A federal court must hold an evidentiary hearing if the petitioner did not receive a full and fair hearing in the state courts. *Townsend v. Sain,* 372 U.S. 293, 312–13, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963) (footnote omitted). An evidentiary hearing is necessary when the habeas petition alleges facts that, if true, establish a right to relief. *Agan v. Dugger,* 835 F.2d 1337, 1338 (11th Cir.1987). Therefore, the court must accept petitioner's alleged facts as true and determine whether he or she has stated a valid claim. *Id.; See also Porter v. Wainwright,* 805 F.2d 930, 933 (11th Cir.1986), *cert. denied,* 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987); *Smith v. Wainwright,* 777 F.2d 609, 615 (11th Cir.1985), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986). In this case, the district court did hold an evidentiary hearing; however, it was restricted to Buenoano's Eighth Amendment claim (relating to Florida's use of the electric chair) and conflict of interest claim.

Following an extensive presentation of evidence on the issue of Florida's electric chair, the district court heard evidence on Buenoano's conflict of interest claim. The court repeatedly stated that it was only interested in hearing evidence on that claim and not concerned about the ineffective assistance of counsel claim. Although evidence was produced on the conflict of interest claim, the only testimony allowed was that of Buenoano's trial attorney. The district court refused to allow testimony from other witnesses on the issue. Further, although some of the testimony elicited from Johnston pertained to the claim of ineffec-

tive assistance of counsel during the penalty phase of the trial, this issue was not adequately explored because of the district court's determination that no evidentiary hearing was required on that claim.

At the conclusion of the hearing, the district court found that there was no merit to Buenoano's claim of ineffective assistance of counsel at the penalty phase. The court held that Johnston's decision not to investigate more deeply into Buenoano's past and present mitigating mental health problems was a reasonable decision, and that even if the evidence should have been presented, the failure to do so did not prejudice Buenoano. With regard to Buenoano's conflict of interest claim, the district court found that the contract did not grant Johnston an assignment of rights to Buenoano's story, but only provided that he be paid for his services from the first $250,000 paid to Buenoano as the result of a book or movie deal. The court did find that there was a potential conflict of interest, but concluded that there was no actual conflict which adversely affected the adequacy of Buenoano's representation. This conclusion was based on Johnston's testimony that he did not conceive of the contract idea until after the guilt phase and shortly before the penalty phase of the trial.

A full evidentiary hearing is required on these issues before determinations of this kind can be made. During the hearing, Buenoano was allowed only to call Johnston to the stand to prove her claims. With regard to her conflict of interest claim, Buenoano should have been allowed to call other witnesses and develop facts in addition to those directly relating to the contract. With respect to the ineffective assistance of counsel at the penalty phase claim, Buenoano should have been allowed to call live witnesses who could corroborate her allegations concerning her childhood and mental health mitigating factors.

We hold that the district court unduly restricted the evidence it allowed on the issue of conflict of interest and failed to hold a hearing on the issue of ineffective assistance of counsel at the penalty phase. Thus, we vacate the denial of relief on

these two claims and remand the case to the district court for a full hearing on these claims.

## IV. CONCLUSION

For the reasons stated above, we VACATE the denial of relief on Buenoano's claims of ineffective assistance of counsel at the penalty phase of her trial and the denial of relief on her conflict of interest claim and REMAND the case for the limited purpose of enabling the district court to conduct a full evidentiary hearing on these two claims. We retain jurisdiction of this appeal and will address the other issues presented by this appeal following disposition of the matters remanded to the district court.

VACATED and REMANDED.