James Armando CARD, Petitioner–
Appellant,

v.

Harry K. SINGLETARY, Jr., Secretary,
Florida Department of Corrections,
Respondent–Appellee.

No. 88–3729.

United States Court of Appeals,
Eleventh Circuit.

Dec. 28, 1992.

Billy H. Nolas and Julie D. Naylor, Talla-
hassee, FL, for petitioner-appellant.

Gary L. Printy, Asst. Atty. Gen., Dept. of
Legal Affairs and Richard B. Martell, Tal-
lahassee, FL, for respondent-appellee.

Before KRAVITCH, HATCHETT and
ANDERSON, Circuit Judges.

KRAVITCH, Circuit Judge:

## ON PETITION FOR REHEARING AND SUGGESTION OF REHEARING EN BANC

Card's petition for rehearing and sugges-
tion of rehearing en banc are DENIED.
No judge on active service has requested

that the court be polled on rehearing en banc. Fed.R.App.P. 35; 11th Cir.R. 35–5. We have modified certain language from our previous opinion in this case, *Card v. Singletary*, 963 F.2d 1440 (11th Cir.1992). The earlier opinion is vacated and withdrawn, and the revised opinion below is substituted therefor.

## REVISED OPINION

This *habeas corpus* case comes before us for the second time. In *Card v. Dugger*, 911 F.2d 1494 (11th Cir.1990), we remanded this case to the district court for the limited purpose of allowing the court to set forth its reasons for denying petitioner Card an evidentiary hearing on the issue of his competency to stand trial. Having reviewed the district court's order on remand, *Card v. Dugger*, Case No. TCA 87–40243–MMP (N.D.Fla. February 14, 1991) ("February 14 Order"), we affirm the court's denial of an evidentiary hearing on the competency issue.

## I. BACKGROUND

Our initial opinion remanding petitioner Card's competency claim to the district court but affirming denial of habeas relief on all other claims sets out in detail the facts of this case. The following summary provides additional context.

Appellant was convicted of robbery, kidnapping and first degree murder in connection with the death of Janice Franklin, clerk of a Western Union office in Panama City, Florida, and was sentenced to death. On direct appeal, the Florida Supreme Court upheld the convictions and sentence. *Card v. State*, 453 So.2d 17 (Fla.), *cert. denied*, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984). After having been denied collateral relief in state court, *Card v. State*, 497 So.2d 1169 (Fla.), *cert. denied*, 481 U.S. 1059, 107 S.Ct. 2203, 95 L.Ed.2d 858 (1987); *Card v. Dugger*, 512 So.2d 829

(Fla.1987), Card filed a *habeas* petition in the Northern District of Florida, asserting eight claims, including the claim that he was denied the right not to undergo criminal proceedings while incompetent. The district court denied petitioner relief on all claims and Card appealed to this court.

With respect to the claim that he was denied the right not to undergo criminal proceedings while incompetent, petitioner argued that (1) his constitutional rights were abridged by the state trial court's failure to afford him a pre-trial competency hearing, *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), and that (2) he was in fact incompetent to stand trial and the district court erred in failing to hold an evidentiary hearing on the issue of Card's actual competence.[1]

Regarding petitioner's *Pate v. Robinson* claim, we concluded that "the 'objective facts known to the trial court were [not] sufficient to raise a bona fide doubt as to the defendant's competency'," *Card v. Dugger*, 911 F.2d at 1519 (*quoting Fallada v. Dugger*, 819 F.2d 1564, 1568 (11th Cir. 1987)), and that therefore the district court was correct in determining that the state trial court did not err by failing to conduct a competency hearing.

We reached this conclusion in spite of our determination that the district court applied the wrong legal standard in assessing petitioner's *Pate* claim:

> In its order, the district court did not set out the legal standard as enunciated by this court in *Zapata*[2] and *Fallada*. Instead, it set out the standard that a federal court is to use in deciding whether a defendant is entitled to an evidentiary hearing when a substantive claim of incompetency is raised *in a request for post-conviction relief.*

*Card*, 911 F.2d at 1518 (emphasis in origi-

---

**1.** For an illuminating discussion of the difference between a *Pate v. Robinson* claim and an actual incompetence claim, see *James v. Singletary*, 957 F.2d 1562, 1569–73 (11th Cir.1992).

**2.** *Zapata v. Estelle*, 588 F.2d 1017, 1020 (5th Cir.1979). The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent

nal) (footnote added).[3] This latter standard, enunciated by this court in *Adams v. Wainwright*, 764 F.2d 1356 (11th Cir.), *cert. denied*, 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986), requires a defendant to present "clear and convincing evidence to create a 'real, substantial and legitimate doubt as to [his] mental capacity ... to meaningfully participate and cooperate with counsel....'" *Adams*, 764 F.2d at 1360 (*quoting Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir.1973)). *Accord Bundy v. Dugger*, 816 F.2d 564 (11th Cir.), *cert. denied*, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987). Notwithstanding the district court's application of the wrong legal standard to Card's *Pate* claim, we found, upon review of the district court's findings and the record, that the facts available to the state trial court did not raise a bona fide doubt as to Card's competency. In so ruling, we relied on the psychiatric reports available to the state court at the time of the January 1982 trial, each of which deemed the appellant competent to stand trial, and the evidence that Card actively and competently participated in his own defense. *Card*, 911 F.2d at 1518–19.

With regard to the second issue—Card's claim that he was actually incompetent to stand trial and that the district court erred in failing to conduct an evidentiary hearing on this claim—we agreed that the standard enunciated in *Bundy* and *Adams* did apply, and that the appellant had "to present facts sufficient to 'unequivocally and clearly' generate a substantial doubt as to mental capacity." *Card*, 911 F.2d at 1519.

Although recognizing that "the district court concluded, in the context of Card's *Pate* claim, that Card did not meet the *Bundy* standard of raising a legitimate doubt as to his competency," we expressed concern that "the district court erroneously

limited itself to the evidence of competency before the trial court." *Id.* Thus, we remanded the case back to the district court to let it review the post-trial evidence presented by Card in support of his claim of incompetency, and to state the grounds, if any, for its denial of an evidentiary hearing on Card's competency to stand trial.

On remand, Card argued to the district court that the mental health experts who evaluated him before trial failed to conduct an adequate evaluation of his competency to stand trial. In support of his position, Card pointed to two psychiatric reports prepared subsequent to his state court trial, in which other psychiatrists identified the deficiencies in the pre-trial competency evaluations: in one such report, the psychiatrist concluded that Card was in fact incompetent to stand trial. Card also pointed to a letter prepared by one of the pre-trial attending psychiatrists, in which the doctor identified errors in his own pre-trial competency evaluation. Finally, Card focused on his history of emotional disturbances in support of his claim of incompetency. This evidence, contended Card, unequivocally and clearly generated a substantial doubt as to his mental capacity, and thus warranted an evidentiary hearing before the district court on the competency issue.

The district court, however, concluded that Card did not meet his burden of positively, unequivocally and clearly raising a legitimate doubt as to his competency to stand trial, and accordingly denied Card an evidentiary hearing on this issue. Petitioner appeals the district court's order.

## II. STANDARD OF REVIEW

◼ We must affirm the district court's finding that Card did not generate a real,

decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**3.** The court continued: "In *Fallada* we made clear that:
[t]he issue of whether the state trial court should have conducted an evidentiary hearing on the defendant's competence is distinct from the issue whether the defendant was in fact competent to stand trial. The latter issue can be raised through a request for post-con-

viction relief even when a bona fide doubt of competency is not raised at trial. When the issue of competence to stand trial (as against the issue of the right to a hearing on competency) is raised in a request for post-conviction relief the burden on the defendant is higher.
819 F.2d at 1567–68 n. 1 (citations omitted)." *Id.*

substantial and legitimate doubt as to his capacity to stand trial unless that finding was clearly erroneous. *Adams v. Wainwright,* 764 F.2d at 1360.

## III. PETITIONER'S ENTITLEMENT TO A COMPETENCY HEARING

The issue of a defendant's competency to stand trial raises due process concerns. *See Bruce v. Estelle,* 483 F.2d at 1036; *Drope v. Missouri,* 420 U.S. 162, 171–72, 95 S.Ct. 896, 903–04, 43 L.Ed.2d 103 (1975). In *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), the Supreme Court defined the contours of this due process right, holding that the test for determining competence to stand trial is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Id.* at 402, 80 S.Ct. at 789.

As noted *supra,* this court's decisions in *Bundy* and *Adams* announce the

legal standard by which a habeas petitioner's request for an evidentiary hearing as to competency should be measured.[4] A defendant must present "clear and convincing evidence to create a 'real, substantial and legitimate doubt as to [his] mental capacity ... to meaningfully participate and cooperate with counsel....' " *Adams,* 764 F.2d at 1360 (*quoting Bruce v. Estelle,* 483 F.2d at 1043); *Bundy v. Dugger,* 816 F.2d at 566; *Card,* 911 F.2d at 1518. As the *Adams* court noted, "[t]he standard of proof is high. The facts must 'positively, unequivocally and clearly generate' the legitimate doubt." *Adams,* 764 F.2d at 1360.[5] For purposes of assessing whether such a legitimate doubt is created, we must accept as true petitioner's alleged facts. *Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963), *overruled on other grounds,* — U.S. —, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); *Agan v. Dugger,* 835 F.2d 1337, 1338 (11th Cir. 1987).[6] Further, we note that this inquiry does not involve a weighing of (1) the evidence in support of a hearing, against (2)

---

4. We have no occasion to consider the possible application to this case of *Keeney v. Tamayo-Reyes,* — U.S. —, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), a decision from the Supreme Court's last term which addresses generally when habeas petitioners may be entitled to evidentiary hearings. In *Keeney,* the Court held that a petitioner is not entitled to an evidentiary hearing unless he demonstrates "cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure." *Id.* at —, 112 S.Ct. at 1721. Respondent never has argued to the district court or to us that *Card* must satisfy a "cause and prejudice" standard in order to obtain a federal hearing on his claim of actual incompetency. Moreover, determining *Keeney*'s applicability to Card's case is unnecessary in light of our decision to affirm the district court's denial of Card's request for a hearing.

5. As applied to cases, like Card's, in which a state court has made factual findings regarding the petitioner's competency, this standard is consistent with the Supreme Court's analysis in *Demosthenes v. Baal,* 495 U.S. 731, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990). In Demosthenes, the Court noted that state court factual findings regarding a petitioner's competency are entitled to a presumption of correctness under 28 U.S.C. § 2254(d), but recognized that such a presumption is rebuttable if the petitioner seek-

ing a competency hearing in federal court presents substantial, meaningful, and unequivocal evidence of incompetency. 495 U.S. at 736, 110 S.Ct. at 2225–26; *see also Lafferty v. Cook,* 949 F.2d 1546, 1549 n. 1 (10th Cir.1991) ("The [28 U.S.C. § 2254(d) presumption is not irrebuttable. If a state court determination is fairly supported by the record, and thus presumed to be correct, the petitioner in a federal evidentiary hearing may nonetheless prevail by shouldering the burden of establishing 'by convincing evidence that the factual determination by the State court was erroneous.' 28 U.S.C. § 2254(d).") The standards enunciated by the Supreme Court and the Tenth Circuit mirror the *Bundy/Adams* standard applied in this circuit.

6. Petitioner's allegation that Card was in fact incompetent to stand trial is not entitled to deference under the *Townsend v. Sain* standard: "[B]y issues of fact we mean to refer to what are termed basic, primary or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators.' [citations omitted]. So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determination, are not facts in this sense." *Townsend,* 372 U.S. at 309 n. 6, 83 S.Ct. at 755 n. 6. Whether one is competent to stand trial under the Fourteenth Amendment is a mixed question of law and fact. *James v. Singletary,* 957 F.2d at 1574 n. 18.

the evidence in support of competency; rather, we must examine whether or not the evidence presented by the petitioner, taken as true, clearly and convincingly generates a legitimate and substantial doubt that he was unable to satisfy the *Dusky* standard when he stood trial in January 1982.

■ In its February 14 Order, the court emphasized that none of the post-trial evidence proffered by Card, even if taken as true, raised any issue as to his ability to meaningfully participate in his own defense. The court reached its conclusion that petitioner was not entitled to a competency hearing after examining in detail the evidence marshalled by the petitioner in support of his claims of incompetency. This evidence falls into two categories: first, historical evidence of petitioner's severe mental illness; second, medical evidence emphasizing the shortcomings of the psychiatric evaluations upon which the state trial court based its determination of competence.

The district court found that the petitioner's lifelong history of emotional problems, although unfortunate, did not reflect on his ability to participate in his defense. February 14 Order at 4. The court further found that the psychiatric evaluations questioning the methodology and findings of the psychiatrists who found petitioner competent to stand trial in January 1982 also failed to positively and unequivocally generate a legitimate doubt as to petitioner's competency. *Id.* at 7–10.

The district court noted in particular Card's "acute awareness of the trial proceedings" and "his understanding of the judicial process after the trial in his post-conviction motions and allegations that his trial counsel was ineffective" as evidence of his competency to stand trial. *Id.* at 11. The court ultimately concluded that petitioner "exhibited no behavior which would bring into doubt his ability to comprehend and participate in the proceedings," *id.*, and

therefore failed to generate unequivocally and clearly a doubt as to his mental capacity as that term was defined in *Dusky*.

Petitioner does not dispute these latter findings, nor does he deny that all the experts who examined him at the time of trial found him competent. *Card*, 911 F.2d at 1519.[7] Rather, petitioner argues that his history of mental problems and the medical testimony calling into question the conclusions of the initial psychiatric evaluations clearly, positively and unequivocally generate a legitimate and substantial doubt as to his competence to stand trial.

We affirm the district court's denial of a competency hearing. We agree with the district court's conclusion that petitioner failed to generate a substantial doubt as to his competence to stand trial in light of his failure to show how either his history of mental problems or the alleged inadequacies of the initial psychiatric evaluations cast doubt on the state court's findings that Card was able to assist in his defense and to appreciate the charges against him.

### A. Card's Medical History

Card identifies in great detail his history of emotional problems, which dates back to childhood and has manifested itself in various ways over the course of his life. We agree with the district court, however, that this evidence does not generate the necessary level of doubt to warrant a competency hearing. Notwithstanding that he has suffered emotional disturbances at various times in his life, petitioner does not suggest that these disturbances manifested themselves in a way that would call into question the district court's undisputed findings that Card did not exhibit any behavior casting into doubt his competence to stand trial. As the district court noted:

> ... Dr. Carbonell states that at the time of trial the defendant adamantly denied his crime. It is not unusual for a man facing the possibility of the death penalty to deny he committed the crime. Dr. Carbonell also asserts that the defendant believed his lawyers were incompetent. Again, is this so unusual considering he

---

7. These experts were Drs. Hord, Berland, Cartwright and Wray.

was convicted? But Dr. Carbonell continues, stating that Card was upset because his lawyer did not know what a latent fingerprint was, and that he had met his lawyers only two days before trial. If anything, these complaints show that Card was acutely aware of the seriousness of the situation, and his lawyers' roles in his defense. He actively attempted to participate in his representation, voicing opinions and suggestions as to his lawyers' actions and inactions.

Dr. Carbonell points out that jail records indicate Card was not eating, sleeping, and was extremely nervous. Again, this is not unusual for a person who was awaiting a trial wherein he could receive the death penalty.

February 14 Order at 4–5.

Petitioner concedes in his brief that "he has [not] been incompetent at each and every point in his life." Petitioner's Brief at 7. Given the district court's undisputed findings regarding Card's behavior at trial, we agree with the court's conclusion that Card's medical history did not unequivocally, clearly and positively generate a legitimate and substantial doubt as to his competence to stand trial. *See Demosthenes v. Baal*, 495 U.S. at 738, 110 S.Ct. at 2227 (Brennan, J., dissenting) (noting Court's denial of a competency hearing in spite of evidence of Baal's history of mental disturbances); *Boag v. Raines*, 769 F.2d 1341, 1342–43 (9th Cir.), *cert. denied*, 474 U.S. 1085, 106 S.Ct. 860, 88 L.Ed.2d 899 (1986) (taken as a whole, 5 attempted suicides between 1954 and 1965, repeated head injuries, history of bizarre behavior, alcoholism and psychopathic personality did not raise substantial doubt as to petitioner's competency to stand trial in 1967).

### B. Psychiatric Testimony

Petitioner further relies on several psychiatric reports which, petitioner claims, generate the necessary level of doubt regarding Card's competence to stand trial.

### 1. Dr. Berland's Letter

First, petitioner proffers a June 1, 1986 letter from Dr. Robert Berland, one of the psychiatrists who examined Card in 1981 and concluded at that time that he was competent to stand trial. *See* R1–Ex. 53. In his letter, Dr. Berland indicates that the results of an MMPI (Minnesota Multiphasic Inventory Profiles) administered in September 1981 reveal that petitioner might have been suffering from a psychotic disturbance at the time the test was administered. R1–Ex. 54–1, 2. Dr. Berland, however, does not suggest that these results, which were not available to him at the time of his initial examination, rendered Card incompetent to stand trial. Rather, he states unequivocally that:

> [w]hile there may be other evidence from that point in time which would indicate subtle thought disorder which could have affected [Card's] trial competency, I was not in possession of that information at that time and am not so now. *I therefore have no basis for questioning his trial competency at the point at which I evaluated him.*

*Id.* at 2 (emphasis added).

Dr. Berland does suggest that a protracted period of pretrial incarceration, such as the four-month period between Berland's September 1981 examination and Card's January 1982 trial, could have exacerbated Card's existing psychoses, rendering him incompetent to stand trial. He explicitly states, however, that any question as to Card's competency in January 1982 would have to be based on "information . . . which suggests the presence of increasingly disturbed thinking or behavior as time passed." *Id.* Dr. Berland makes no claim whatsoever to possessing such information, nor does he contend that such information exists at all. All in all, given his unwillingness to disavow his previous determination of competency, Dr. Berland's report does not generate the requisite level of doubt regarding Card's competency to stand trial.

### 2. Dr. Smith's Report

Petitioner also proffers the June 1, 1986, report of Dr. Harold H. Smith, in which Dr.

Smith, upon review of the psychological reports and testing of Card conducted at the time of trial, concludes that "substantial issues relating to Mr. Card's competency to stand trial were unresolved by the reports of the experts filed with the court," and that "there was substantial reason for a further inquiry into competency which needed to be conducted for the determination to have any reliability." R1–Ex. 55–2.

As the district court noted, however, Dr. Smith's report is anything but unequivocal in its assessment of petitioner's competency to stand trial. *See Demosthenes*, 495 U.S. at 734, 110 S.Ct. at 2225. Indeed, Dr. Smith never suggests that Card was incompetent to stand trial, but rather that, for various reasons, the evaluations conducted before Card stood trial were not completely reliable. Even these latter contentions are equivocal; for example, although Dr. Smith contends that Dr. Berland's report, which was based primarily on personal interviews rather than on psychological testing, fell below professional standards in death cases, he concedes that "it is possible to conduct a competency evaluation without the use of psychological testing." *Id.* Similarly, Dr. Smith criticizes Dr. Cartwright's evaluations because "[Dr. Cartwright] *may have* overlooked several important indicators of mental disease or defect which *may* affect competency." *Id.* at 3 (emphasis added). Further, although Dr. Smith questions Dr. Cartwright's conclusions because "Dr. Cartwright's doctoral degree is not within the area of clinical psychology," *id.*, he does not contend that Dr. Cartwright was incapable of making a valid competency determination, nor is such a contention supported by Florida law.[8]

Dr. Smith also relies on Card's history of mental disturbances in questioning the determinations of Card's competency at the time of trial. As noted *supra*, this history, left unrelated to Card's behavior at trial, does not unequivocally and clearly generate a legitimate and substantial doubt that Card satisfied the *Dusky* standard.

### 3. *Dr. Carbonell's Report*

Finally, petitioner points to the report of Dr. Joyce Carbonell, dated September 10, 1987, in which Dr. Carbonell concluded that "Mr. Card has had a lifelong history of emotional deprivation, psychiatric problems, self-injurious behavior and head trauma;" that "virtually none of this was included in the reports of the experts who examined Mr. Card before trial;" that "Mr. Card has been considered, at various times throughout his life, to be suffering from a disorder of psychotic proportions;" and that "[O]ne can only conclude that Mr. Card was incompetent to stand trial." R1–Ex. 44–17 to 21. Although, unlike Dr. Smith, Dr. Carbonell is unequivocal in her ultimate conclusion that petitioner was incompetent to stand trial, her report still does not generate the necessary level of doubt to cast doubt on the trial court's factual findings, or to render the district court's denial of an evidentiary hearing clearly erroneous.

Dr. Carbonell's evaluation of competency is based, first, upon her assessment that Card's mental problems were of psychotic dimensions, and that the experts who examined the petitioner at the time of trial failed to consider these circumstances in deeming Card competent to stand trial. Assuming, as we must in this context, that Dr. Carbonell correctly diagnosed all of petitioner's mental problems, her diagnosis does not generate a legitimate or substantial doubt as to petitioner's competency to stand trial. As the Seventh Circuit noted in *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir.), *cert. denied*, 469 U.S. 1193, 105 S.Ct. 972, 83 L.Ed.2d 975 (1985), "not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." (citations omitted). *See also Demosthenes, supra; Boag v. Raines*, 769 F.2d at 1342–43; *McCune v. Estelle*, 534 F.2d 611, 612 (5th

---

**8.** Florida does not require that the psychologists appointed to determine issues of mental competency have degrees in clinical psychology. Fla. Stat.Ann. § 916.11(1)(b).

Cir.1976) (abundant evidence of petitioner's lifelong history of severe mental deficiency and bizarre, volatile and irrational behavior cannot be equated with mental incompetency to stand trial). Given that she does not at any time suggest that petitioner was incapable of meeting the *Dusky* standard, Dr. Carbonell's conclusions as to petitioner's mental condition does not raise a question as to Card's competency to stand trial.[9]

Second, Dr. Carbonell's other criticisms of the prior evaluations of Card also fall short of generating a legitimate and substantial doubt as to Card's competency. Dr. Carbonell's comments regarding the apparent antipathy between Drs. Hord and Cartwright do not serve to impeach the conclusions of either doctor. Her attempts to find inconsistencies in Dr. Wray's reports fail in light of Dr. Wray's initial diagnosis of *"possible* megalomania" and *"possible* encapsulated paranoid delusions." R1–Ex. 47 (emphasis added). Dr. Carbonell also relies upon Dr. Berland's June 1, 1986 letter reassessing his initial evaluation of the petitioner. As discussed *supra* Op. at 485–86, this reassessment does not generate a legitimate and substantial doubt as to Card's competence to stand trial in 1982.

Having criticized the prior examinations of Card, Dr. Carbonell concludes, based on her own examination, that Card was in fact incompetent to stand trial in 1982. Dr. Carbonell supports this conclusion by recourse to the very evidence that she intimates was not considered in the previous evaluations. As noted *supra,* however, evidence of mental illness such as that exhibited by the petitioner and relied upon by Dr. Carbonell does not demonstrate incompetence to stand trial. *See Boag, supra; McCune, supra; DeRobertis, supra.* Thus, that Card "has been obviously mentally ill, self-destructive, anxious, and functioning at a level below his intellectual po-

tential," R1–Ex. 44–19, does not indicate that he was incompetent to stand trial.

Neither the report of Dr. Smith nor the report of Dr. Carbonell unequivocally and clearly generates a legitimate and substantial doubt as to Card's competency to stand trial in January 1982. These reports provide no evidence that Card was unable to assist in his defense or appreciate the charges against him at that time.

### C. Other Cases

Petitioner cites *Agan v. Dugger,* 835 F.2d 1337 (11th Cir.1987); *Bundy v. Dugger,* 816 F.2d 564 (11th Cir.), *cert. denied,* 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987); and *Bruce v. Estelle,* 483 F.2d 1031 (5th Cir.1973), in support of his contention that this court, and its predecessor circuit, has routinely granted competency hearings where the petitioner had an extended history of mental illness (*Agan*) and appeared *pro se* in some of the proceedings (*Bundy, Bruce*).

These cases, however, do not control this case, insofar as evidence in each of these cases established a clear doubt as to the petitioner's inability to assist in his defense or appreciate the charges against him. In *Agan,* evidence of the petitioner's extended history of mental illness was buttressed by evidence that, *during trial,* he exhibited bizarre and irrational behavior. *Agan,* 835 F.2d at 1339. No such evidence is available here. In *Bundy,* the petitioner presented similar evidence of irrational behavior, 816 F.2d at 567; further, the petitioner presented uncontradicted psychiatric testimony, *from the time of trial,* that "Bundy 'lacks a rational understanding of what is facing him' and ... lacks 'sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding.' " *Id.* Again, petitioner's psychiatric evidence fails to support any contention

---

9. It should also be noted that, although Dr. Carbonell contends that the previous evaluations of Card were "sadly lacking" in their failure to include discussions of Card's lifelong history of emotional problems, it is clear from the reports that Drs. Wray and Cartwright both considered this history. *See* R1–Exs. 47, 52. As noted *supra,* however, the significance of Card's mental health history to a determination of his competence to stand trial in 1987 is limited in the absence of evidence that he could not satisfy the *Dusky* standard.

that he was unable to satisfy the *Dusky* standard. Finally, in *Bruce,* two psychiatrists pronounced the defendant insane at the time of trial, and the defendant was involuntarily committed by court order to a mental institution subsequent to those psychiatric evaluations. *Bruce,* 483 F.2d at 1034. Again, no such determinations have been made in this case. The district court in this case reviewed in great detail the evidence presented by the petitioner in support of his substantive competency claim. Its conclusion that petitioner did not unequivocally and positively generate a legitimate and substantial doubt as to his competency to stand trial, so as to warrant an evidentiary hearing on that issue, is not clearly erroneous.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of an evidentiary hearing on the issue of petitioner's competency to stand trial.