**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charles Joseph HOGAN, a/k/a Hal Winter, Michael Trupei, Defendants–Appellants.**

**No. 90–5595.**

United States Court of Appeals, Eleventh Circuit.

March 3, 1993.

C. Craig Stella, Ft. Lauderdale, FL, for Hogan.

Barry L. Halpern, Coconut Grove, FL, for Trupei.

Dexter W. Lehtinen, U.S. Atty., Miami, FL, Michael Walleisa, Asst. U.S. Atty., Linda C. Hertz, Alice Ann Burns, Anne M. Hayes, Ft. Lauderdale, FL, for U.S.

Before FAY, DUBINA and CARNES, Circuit Judges.

CARNES, Circuit Judge:

This case is an appeal by two defendants from convictions for conspiracy to possess a controlled substance with intent to distribute, conspiracy to manufacture a controlled substance with intent to distribute, and the use of a telephone to facilitate the manufacture and distribution of such substances.

In March 1988, Appellant Charles Joseph Hogan, a 74-year-old man with impaired hearing, was introduced by a confidential informant to Detective Alfred Scotti of the Fort Lauderdale, Florida Police Department. Scotti posed as a drug dealer willing to transport drugs from one area to another. Hogan spoke to Scotti about transporting one or two 55-gallon drums of phenylacetone ("P-2-P"), a controlled substance, from Germany to the United States. Hogan told Scotti how he had used P-2-P to make methamphetamine, also a controlled substance, in the past. Hogan and Detective Scotti agreed to meet again to further discuss a possible venture.

The conspiracy developed over subsequent meetings and telephone conversations, many of which were recorded by government agents. The parties' plans changed several times during the course of the conspiracy, and included variations in the source of drugs and chemicals, the nature and quantity of the drugs, and the means and route by which they would be transported. Appellant Michael Trupei was involved in these conversations as a contact with German or Brazilian suppliers of P-2-P and as a potential pilot for air transport of the materials. He was implicated by Hogan numerous times and incriminated himself to undercover agents in the two meetings at which he was present. No transaction ever occurred and no drugs were ever seized.

Charles Hogan was arrested and charged with conspiring both to possess P-2-P with intent to distribute and to manufacture and distribute methamphetamine (Count One); conspiring to possess cocaine with intent to distribute (Count Two); using a telephone to facilitate both the possession of cocaine with intent to distribute (Count Three) and the manufacture and distribution of methamphetamine (Counts Four through Ten). Trupei was charged under Count One along with Hogan and two other codefendants who are not before the Court in this appeal. The case proceeded to trial and Hogan was convicted by a jury on Counts One, Two, Four, Eight, and Ten. Trupei was convicted as charged under Count One. Both appellants are presently incarcerated.

Hogan claims on appeal that he was incompetent to stand trial and that the district court committed error in admitting his prior conviction for conspiracy to manufacture methamphetamine and possess cocaine. Trupei argues that the evidence was legally insufficient to convict him, that he was unfairly prejudiced by the district court's refusal to sever him from Hogan's trial, and that the transcripts of recorded conversations were erroneously admitted into evidence based on an improper foundation. Each issue will be discussed in turn.

## I. COMPETENCY TO STAND TRIAL

Hogan's attorney questioned his competence to stand trial, and the district court held a hearing on the issue. After hearing the evidence, the court found that Hogan was competent to stand trial, a determination Hogan contests on this appeal.[1]

1. Hogan was also a defendant in another case before the same district court judge. The competency hearing was actually held in that other case, but the judge adopted his conclusion from

At the competency hearing Dr. Joel Klass, a psychiatrist, testified in Hogan's behalf, stating that while Hogan appeared superficially competent, there were areas of "Alzheimer changes," that Hogan's rendition of events leading up to his arrest was not coherent, and that he had trouble putting things in context accurately and giving specific dates. Although Dr. Klass found Hogan at least marginally competent, given the complexity of the case against him, it was his professional opinion that Hogan would have trouble assisting counsel in preparing a theory of defense or cross examination of government witnesses.

The government's expert psychiatric witness, Dr. Albert Jaslow, also examined Hogan and testified that he had a rational and factual comprehension of the proceedings against him and sufficient ability at the time of the hearing to consult with his lawyer with a reasonable degree of rational understanding. The district court found Hogan competent to stand trial.

### A. The Standard of Review

Beginning our review of the district court's finding of competency to stand trial with a search for the proper standard of review to be applied to such a finding, we run directly into a split of authority in this Circuit. We are certainly not the first panel to note the problem of our conflicting precedents on the issue of the standard of appellate review applicable to competency determinations. Writing for this Court in *Bundy v. Dugger*, 850 F.2d 1402, 1408 n. 5 (11th Cir.1988), *cert. denied*, 488 U.S. 1034, 109 S.Ct. 849, 102 L.Ed.2d 980 (1989), Judge Johnson, beginning with charitable understatement, noted:

> From our predecessor circuit we have inherited two somewhat inconsistent lines of authority with respect to the standard of review we should apply to the district court's finding that Bundy was competent to stand trial. Under one line of cases a district court's finding of competency to stand trial is a finding of

fact that can be set aside only if clearly erroneous or arbitrary. *See United States v. Hayes*, 589 F.2d 811, 822 (5th Cir.), *cert. denied*, 444 U.S. 847, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979); *United States v. Fratus*, 530 F.2d 644, 647 (5th Cir.), *cert. denied*, 429 U.S. 846, 97 S.Ct. 130, 50 L.Ed.2d 118 (1976); *United States v. Stone*, 472 F.2d 909, 913 (5th Cir.1973), *cert. denied*, 449 U.S. 1020, 101 S.Ct. 586, 66 L.Ed.2d 482 (1980); *United States v. Gray*, 421 F.2d 316, 317 (5th Cir.1970); *see also United States v. Birdsell*, 775 F.2d 645, 648 (5th Cir.1985), *cert. denied*, 476 U.S. 1119, 106 S.Ct. 1979, 90 L.Ed.2d 662 (1986). This is consistent with the approach taken by other circuits. *See, e.g., McFadden v. United States*, 814 F.2d 144, 146 (3d Cir.1987); *United States v. Lovelace*, 683 F.2d 248, 251 (7th Cir.1982); *Chavez v. United States*, 656 F.2d 512, 517 (9th Cir.1981); *United States v. Caldwell*, 543 F.2d 1333, 1349 (D.C.Cir.1974), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976) (all using the clearly erroneous standard). In another line of cases, however, the Fifth Circuit has been less deferential, reviewing historical facts under a clearly erroneous standard but taking a more stringent "hard look" at the district court's ultimate finding of competency. *See Lokos v. Capps*, 625 F.2d 1258, 1267 (5th Cir.1980); *Bruce v. Estelle*, 536 F.2d 1051, 1059–60 (5th Cir.1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977); *United States v. Makris*, 535 F.2d 899, 907 (5th Cir.1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977); *see also Wheat v. Thigpen*, 793 F.2d 621, 631 (5th Cir.1986), *cert. denied*, 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987).

*See also United States v. Caraza*, 843 F.2d 432, 437 (11th Cir.1988) ("This court cannot overturn a district court's competency determination unless it was 'clearly arbitrary or unwarranted.'"). Another panel in *United States v. Clark*, 893 F.2d 1277, 1281 (11th Cir.), *cert. denied*, 494 U.S. 1090, 110 S.Ct. 1833, 108 L.Ed.2d 962

the other case for purposes of this case. The record on appeal in this case has been supple-

mented to include the evidentiary hearing on the competency issue.

(1990), concurred in the *Bundy* panel's observation, noting that "[t]here has been a divergence ... in binding authority on the issue." As the observations in the *Bundy* and *Clark* opinions evidence, we have an intracircuit split of authority on the standard of review applicable to a district court's competency finding.

■ Ideally, the phrase "intracircuit split of authority" should be oxymoronic, because it is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court. *E.g., Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). Unfortunately, no one is perfect, least of all federal appellate judges, and from our mistakes and oversights spring inconsistent decisions which we must deal with as best we can.

■ Given the delicate nature of the task, it is not surprising that one of the most favored means for resolving an inconsistency in circuit precedents is to determine that the inconsistency is more apparent than real. A panel of this Court is obligated, if at all possible, to distill from apparently conflicting prior panel decisions a basis of reconciliation and to apply that reconciled rule. Unfortunately, the present issue is one in which the conflict in our precedents is as real as it is apparent, and no reconciliation is possible, at least not so long as the focus is on circuit precedent *per se.*

■ Another common method for dealing with intracircuit conflicts is to recognize the split of authority and then proceed to determine whether the facts of the case at hand are such that resolution of the conflict is unnecessary to dispose of the case. Such an approach is often efficient and appropriate, but it has drawbacks. One is that it might appear to some cynical observers that judges could conceivably be tempted, if only subconsciously, to read the facts of a case in such a way as to avoid the more troublesome prospect of dealing with the conflict of authority. We are confident that no judge would give in to such a

temptation, but the possibility of mistaken appearances is a prospect to be considered especially if, in case after case, the facts always seem to rescue the court from the conflict. The second drawback to resorting to the facts of a particular case in order to avoid facing up to an intracircuit conflict is that such an approach only postpones the inevitable. As the conflicting decisions collected in *Bundy v. Dugger*, 850 F.2d at 1408 n. 5, demonstrate, the conflict we are addressing in this case has existed at least since 1976. A decade and a half of confusion is enough.

■ A third method for resolving intracircuit conflicts is by a decision of the whole court. Given the finite resources of a court of appeals, the heavy artillery of *en banc* decision making should be resorted to only where smaller gauge weapons are unavailing. We believe that the particular intracircuit conflict we are addressing can be settled by yet another method without the necessity of empaneling the *en banc* court.

■ It is the law of this Circuit that a subsequent panel is not obligated to follow a prior panel's decision where an intervening Supreme Court decision establishes that the prior panel decision is wrong. *E.g., United States v. Giltner*, 972 F.2d 1563, 1566 (11th Cir.1992) (on rehearing) ("This court may decline to follow a decision of a prior panel if such action is necessary in order to give full effect to a decision of the United States Supreme Court."); *Lufkin v. McCallum*, 956 F.2d 1104, 1107 (11th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 326, 121 L.Ed.2d 246 (1992). Accordingly, when confronted with an intracircuit split of authority, a subsequent panel may search for an intervening Supreme Court decision to settle the conflict. The Supreme Court's decision in *Demosthenes v. Baal*, 495 U.S. 731, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990) (per curiam), offers an opportunity, by way of analogous precedent, of mending our intracircuit split on the issue of the proper standard of appellate review of a district court's finding that a defendant is competent to stand trial. *Baal* provides an analogy only, and is not

directly on point, because that case differed from this one in two ways. First, it was not a direct appeal case, but instead involved federal habeas corpus review of a state court decision. Second, *Baal* did not involve review of a finding of competence to stand trial; instead it involved review of a finding of competence to waive federal post-conviction review. However, to the extent that those two aspects of *Baal* are themselves analogous to the issue at hand, then the rule of that case can be extrapolated to the present case.

In *Demosthenes v. Baal* a state court had found a death row inmate whose conviction and death sentence had been upheld on direct appeal to be competent to waive his right to pursue further post-conviction review of his claims. The parents of the inmate filed a "next friend" federal habeas petition along with two affidavits questioning the inmate's competence to waive federal review of his claims. The district court denied a certificate of probable cause, but the Ninth Circuit granted the certificate and entered a stay of execution. In reversing the Ninth Circuit, the Supreme Court held that the state court's finding that the inmate was competent was a factfinding entitled to the 28 U.S.C. § 2254(d) presumption of correctness. The Court said:

> A state court's determinations on the merits of a factual issue are entitled to a presumption of correctness on federal habeas review. A federal court may not overturn such determinations unless it concludes that they are not "fairly supported by the record." See 28 U.S.C. § 2254(d). We have held that a state court's conclusion regarding a defendant's competency is entitled to such a presumption. *Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983). In this case, the state court's conclusion that Baal was competent to waive his right to further proceedings was "fairly supported by the record." ... Accordingly, under § 2254's presumption of correctness, the state court's factual finding as to Baal's competence is binding on a federal habeas court. See *Maggio, supra; see also*

*Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) (§ 2254(d)'s presumption of correctness required federal habeas court to accept state court's factual findings on the issue of respondent's credibility).

495 U.S. at 735, 110 S.Ct. at 2225. As stated earlier, to gauge the strength of the analogy between the holding in *Baal* and the issue at hand we must compare two aspects of that case with this case. First, we must compare the presumption of correctness applicable to state court factfindings in federal habeas review proceedings with the clearly erroneous standard of review applicable on direct appeal of district court factfindings. Second, we must compare the definition of mental competency to waive further proceedings with the definition of mental competency to stand trial.

A presumption of correctness for state court factfindings under 28 U.S.C. § 2254(d) is closely analogous to a clearly erroneous standard of review of a district court's factfindings on direct appeal. Both apply only to factfindings and not to conclusions that are based upon the application of law to fact or, as is sometimes said, mixed questions of law and fact. Both reflect a proper deference on the part of the reviewer to a prior fact-based determination. The Supreme Court has noted the similarity between the scope and function of review in these two instances. *Marshall v. Lonberger,* 459 U.S. 422, 434–435, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983) ("We greatly doubt that Congress, when it used the language 'fairly supported by the record' considered 'as a whole' intended to authorize broader federal review of state court credibility determinations than are authorized in appeals within the federal system itself."). Any doubt that might otherwise exist on this matter is dispelled by *Lonchar v. Zant,* 978 F.2d 637 (11th Cir.1992), which held that a federal district court's conclusion that a death row inmate was competent to decide to forego further proceedings is a factfinding subject to direct appellate review only for clear error. *Id.* at 640. *Lonchar* did not cite the *Baal* decision. Nonetheless, it establishes direct-

ly what *Baal* establishes only by analogy—a district court's conclusion that a petitioner is competent to forego further review is a factfinding reviewable under the clearly erroneous standard.

■ As for comparison of the standard or definition of competency to waive federal post-conviction review with that of competency to stand trial, the proper measure is the fact-versus-law content of the two standards, because it is that relative content that defines deferential review. The standard for competency to waive post-conviction review is whether the inmate "has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises," *Rees v. Peyton*, 384 U.S. 312, 314, 86 S.Ct. 1505, 1506, 16 L.Ed.2d 583 (1966), *quoted in Lonchar v. Zant*, 978 F.2d at 641. The standard for competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960); *accord, e.g., Tiller v. Esposito*, 911 F.2d 575, 576 (11th Cir.1990); *Rivers v. Turner*, 874 F.2d 771, 774 (11th Cir.), *cert. denied*, 493 U.S. 940, 110 S.Ct. 339, 107 L.Ed.2d 328 (1989). There is no significant difference between the relative fact-versus-law content of the standard for competency to stand trial and that of the standard for competency to waive post-conviction federal review. Thus, *Demosthenes v. Baal* is strong authority, albeit by analogy, for holding that the proper standard of review on direct appeal is to treat competency to stand trial as a factfinding subject to reversal only for clear error.

Bolstering our belief that the *Baal* decision can be extrapolated to cases involving competency to stand trial is the Supreme Court's statement in *Baal* that it had previously held in *Maggio v. Fulford*, 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983), that "a state court's conclusion regarding a defendant's competency is entitled to such a presumption [of correctness]." *Baal*, 495 U.S. at 735, 110 S.Ct. at 2225. The *Maggio* case involved competency to stand trial. Thus, as interpreted in *Baal*, the Supreme Court's *Maggio* decision stands for the proposition that a state court's conclusion that a defendant is competent to stand trial is a factfinding.[2] If a state court's conclusion that a defendant is competent to stand trial is a factfinding for habeas review purposes, and the Supreme Court has said it is, then it follows that the identical conclusion by a district court is a factfinding for purposes of direct review.

Our holding is not unfaithful to the rule of law that binds us to follow prior panel precedent. The prior panel decisions that support the hard look standard of review, see p. 1368, above, all pre-date the Supreme Court's 1990 decision in *Demosthenes v. Baal*. Under the law of this Circuit, we are not bound to follow a prior panel decision if a supervening decision of the Supreme Court shows it to have been wrongly decided. *E.g., Lufkin*, 956 F.2d at 1107; *Giltner*, 972 F.2d at 1566. The subsequent Supreme Court decision in *Baal* shows that those prior panel decisions applying a "hard look" standard of review were wrong and the prior panel decisions applying a clearly erroneous standard of review were correct. Thus, our intracircuit conflict has been effectively resolved by the Supreme Court.

The language in two post-*Baal* panel opinions appears to conflict with our present holding, but that language is dictum. In *James v. Singletary*, 957 F.2d 1562, 1574 n. 18 (11th Cir.1992), the panel said that a finding of competency to stand trial constitutes a mixed question of law and fact which would not be entitled to a presumption of correctness in a habeas pro-

---

**2.** The Supreme Court's interpretation in *Baal* of its holding in *Maggio v. Fulford* is contrary to and overrules this Court's interpretation of that holding in *Price v. Wainwright*, 759 F.2d 1549, 1552 (11th Cir.1985).

ceeding. In addition to being flatly contrary to the Supreme Court's statement in *Baal,* 495 U.S. at 735, 110 S.Ct. at 2225 ("We have held that a state court's conclusion regarding a defendant's competency is entitled to such a presumption."), that statement by the *James* panel is also clearly dictum. Indeed, the very sentence to which the statement is attached by footnote says that, "no state court has found petitioner to have been competent to stand trial." 957 F.2d at 1574. Accordingly, the issue simply was not presented in the *James* case, and we are not bound by its dictum.

■ Following the footnote dictum in *James v. Singletary,* another panel of this Court recently stated that, "[w]hether one is competent to stand trial under the Fourteenth Amendment is a mixed question of law and fact." *Card v. Singletary,* 981 F.2d 481, 485 n. 6 (11th Cir.1992) (as revised on rehearing). However, *Card* did not involve either the scope of direct appellate review of a district court's finding of competency, nor did it involve a federal habeas court's scope of review of a state court finding of competency. Instead, *Card* was concerned only with the manner in which a habeas petitioner's allegations in support of a request for an evidentiary hearing on competency should be evaluated. The *Card* opinion repeated the erroneous footnote dictum from *James v. Singletary* in a footnote of its own attached to a discussion relating only to the issue of how to treat and assess allegations of incompetency made by a habeas petitioner seeking a hearing on competence. We have a different issue before us, and we resolve that issue with guidance from the Supreme Court's holding on a closely related question in *Demosthenes v. Baal.* We hold that a district court's determination that a defendant is competent to stand trial is not reviewed de novo, it is not reviewed with a hard look, it is not reviewed under anything other than a clearly erroneous standard. Having held that the clearly erroneous standard of review is applicable, we proceed to apply that standard to the district court's finding that Hogan was competent to stand trial.

**B. Application of the Standard of Review in This Case**

■ Hogan argues that the determination by the trial court that he was fit to stand trial was in fact clearly erroneous. A federal appellate court conducting a review for clear error is required to give "due regard" to the trial court's opportunity to assess the credibility of witnesses. *Amadeo v. Zant,* 486 U.S. 214, 223, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249 (1988). "A finding of fact is clearly erroneous only when we are left with a definite and firm conviction that a mistake has been committed." *United States v. Roy,* 869 F.2d 1427, 1429 (11th Cir.), *cert. denied,* 493 U.S. 818, 110 S.Ct. 72, 107 L.Ed.2d 38 (1989). This review is a deferential one, and Hogan bears the burden of demonstrating that the district court clearly erred in concluding that he was competent to stand trial.

■ Hogan asserts that pre-trial psychiatric tests revealed that he was incapable of consulting with his lawyer. This conclusion, he claims, is corroborated by his disjointed and irrational trial testimony. Hogan contends that his hearing impairment, advancing age and the onset of senility rendered him unfit for trial. However, after a review of the evidence before the district court, we find that its conclusion is not clearly erroneous.

An expert for the prosecution, Dr. Albert Jaslow, testified at Hogan's competency hearing that Hogan did have a rational understanding of his position and the proceedings against him, as well as an ability to rationally consult with his attorney. Hogan was able to understand Dr. Jaslow's questioning and competently describe actions and events prior to his arrest. In his interview with Dr. Jaslow, Hogan quite capably offered an adequate interpretation and discussed his disagreement with the simple proverb: "two heads are better than one." Dr. Jaslow testified that Hogan had some minor organic defects which led to simple forgetfulness associated with old age. This forgetfulness was characterized as a difficulty with dates and continuity,

but is not the type of disorientation required for a finding of incompetence.

Hogan's expert, Dr. Joel Klass, testified that superficially Hogan appeared competent and appropriate, and that Hogan seemed aware of his surroundings. Dr. Klass characterized Hogan's forgetfulness as pre-senility dementia and not Alzheimer's disease. In fact, Dr. Klass testified that for simple matters he considered Hogan competent. It was only for complex issues, areas that require critical thinking and abstract reasoning that Dr. Klass considered Hogan incompetent. Frequently when Dr. Klass was asked if Hogan was competent, he prefaced his negative response with an assertion that Hogan appears normal in ordinary conversation.

■ The district court found that the minor defects in Hogan's cognitive abilities did not render him incapable of providing rational assistance to his attorney. Even perfectly competent defendants often do not fully comprehend the intricacies of some of the defensive theories offered by their lawyers. That level of comprehension is not a requirement of competency. All that is required is that Hogan had a rational as well as a factual understanding of the proceedings against him and had sufficient present ability to consult with his attorney with a reasonable degree of rational understanding. We cannot say that the district court clearly erred in finding that he did.

## II. ADMISSION OF HOGAN'S PRIOR CONVICTION

■ Hogan next asserts that the district court was in error when it admitted into evidence his 1985 conviction for conspiracy to manufacture methamphetamine and possess cocaine with intent to distrib-

ute. At trial, the government introduced into evidence an information, judgment, and commitment order showing that Hogan had been convicted of such offenses. Approximately fifteen pounds of methamphetamine and $23,000 cash were seized from Hogan at that time. Hogan claims that the probative value of this evidence was far outweighed by its prejudicial impact. Buttressing this claim is his assertion that the relevance of this evidence is minimized by its dissimilarity to the crime at bar and its remoteness in time. As such, Hogan asserts, there was no substantial need to demonstrate that he was so convicted in the past.

Federal Rule of Evidence 404(b), as in effect when Hogan was tried, stated in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[3]

In *United States v. Stubbs*, 944 F.2d 828, 836 (11th Cir.1991), we reiterated our three-part test for determining the admissibility of evidence under Rule 404(b): "(1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; (3) the government must offer sufficient proof so that the jury could find that defendant committed the act." The decision by a district court to admit evidence of a prior conviction pursuant to Rule 404(b) is reviewable under an abuse of discretion standard. *Id.*

---

**3.** Federal Rule of Evidence 404(b) was revised, and the paragraph cited above was effective until December 1, 1991. New rule 404(b), effective December 1, 1991, reads as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or acci-

dent, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Since Hogan was tried and convicted in 1990, the old rule governed and notice was not required.

**1374**

The district court admitted the prior conviction as relevant to Hogan's intent to commit the crime in this case. The similarity between the two crimes and the facts relating thereto make the former conviction highly probative of Hogan's intent. Further, the time between the two events is not enough to so reduce the value of the prior conviction as to make it unduly prejudicial. *See United States v. Pollock*, 926 F.2d 1044, 1047–48 (11th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991) (five years between prior conviction and occurrence of instant crime not too remote). Thus, the first two requirements for admission were met. The third requirement was amply satisfied by admission of a judgment and conviction order from the prior proceedings. The district court did not abuse its discretion in admitting evidence of Hogan's earlier indiscretion.

### III. SUFFICIENCY OF THE EVIDENCE TO CONVICT TRUPEI

 Trupei first attacks the sufficiency of the evidence to support his conviction. He claims that Hogan's conversations with undercover agents were the mere ramblings of an old man excited by a free meal and remembrances of crimes committed. Trupei discounts the words of Hogan as "just talk" and then concludes that the remaining evidence, mere suspicion and inference, was hardly enough to support a conspiracy conviction.

"This Court cannot reverse a conviction for insufficiency of the evidence unless after reviewing the evidence in the light most favorable to the government, we conclude that no reasonable jury could find proof beyond a reasonable doubt." *United States v. Jones*, 913 F.2d 1552, 1557 (11th Cir.1990). We are bound to accept reasonable inferences and credibility choices made by the fact-finder. *United States v. Roper*, 874 F.2d 782, 787 (11th Cir.), *cert. denied*, 493 U.S. 867, 110 S.Ct. 189, 107 L.Ed.2d 144, *and cert. denied*, 493 U.S. 955, 110 S.Ct. 369, 107 L.Ed.2d 355 (1989). Because there is "rarely any direct evidence of an agreement to join a criminal conspiracy," such a conspiracy may be proven by the use of circumstantial evidence alone. *United States v. Miller*, 693 F.2d 1051, 1053 (11th Cir.1982). As we explained in *Jones:*

> To support a conviction for conspiracy, the government must prove only that two or more persons agreed to commit a crime, that the defendant knew of the conspiratorial goal, and that he voluntarily participated in helping to accomplish that goal. The existence of such an agreement may be proved by either direct or circumstantial evidence; a common scheme or plan may be inferred from the conduct of the alleged participants or from other circumstances. It is not necessary for the government to prove that a defendant knew every detail or that he participated in every stage of the conspiracy. Nor is it necessary for the government to disprove every reasonable hypothesis of innocence, as the jury is "free to choose among reasonable constructions of the evidence."

*United States v. Jones*, 913 F.2d at 1557 (citations omitted).

The evidence against Trupei consisted of references by Hogan to him as a German friend who would help facilitate the transfer of the chemicals from Germany and who would act as pilot for air transport of the contraband. At the close of one meeting with undercover agents, Hogan suggested they meet with Trupei at Trupei's place. That meeting took place in a warehouse in Pompano Beach, Florida. Trupei and an agent discussed the suitability of various models of aircraft for the proposed smuggling operations. While discussing aircraft ranges and the necessity of stopping over in a South American country, Trupei said that he preferred not to stop at all because he had had bad experiences doing that. Trupei said he knew the whole Caribbean and South American area well. Trupei was present and involved throughout the whole meeting and did not object to any of the illegal plans being made.

Detective Scotti again met with Trupei at which time Trupei told the agent that his

role was to facilitate transfer of the contraband. Evidence of several meetings between only Hogan and Trupei was also admitted, and Hogan's accounts of these meetings served to further inculpate Trupei.

This evidence was certainly sufficient for a jury to conclude that Trupei had agreed to participate in the unlawful plan. It does not matter that Trupei's involvement ultimately did not aid a successful culmination of the criminal enterprise, because the acts committed by him were adequate to convict him.

■■ Trupei's argument that his withdrawal from the conspiracy foreclosed liability is similarly unavailing. Withdrawal from a conspiracy is only a defense if the actor affirmatively withdrew; it is not enough that he merely ceased to participate. In *United States v. Finestone*, 816 F.2d 583 (11th Cir.), *cert. denied*, 484 U.S. 948, 108 S.Ct. 338, 98 L.Ed.2d 365 (1987), we held:

> To establish that he withdrew from a conspiracy, the defendant must prove that he undertook affirmative steps, inconsistent with the objects of the conspiracy, to disavow or to defeat the conspiratorial objectives, *and* either communicated those acts in a manner reasonably calculated to reach his co-conspirators or disclosed the illegal scheme to law enforcement authorities.

*Id.* at 589 (emphasis in original). Since Trupei merely ceased to participate and did not affirmatively withdraw, the defense of withdrawal is not available to him.

## IV. FAILURE TO SEVER

■■ Trupei next argues that he was deprived of a fair trial due to the trial court's refusal to sever his case from that of Hogan. He claims that since most of the evidence presented went to the crimes charged against Hogan, compelling prejudice resulted from the jury's inability to separate the evidence against each of the co-conspirators. His skepticism regarding the cognitive ability of the jury is unwarranted.

We have held that "[d]efendants charged in a conspiracy are ordinarily tried together. We review a denial of a Rule 14 severance motion for abuse of discretion and will not reverse unless the resulting joint trial caused the defendant 'compelling prejudice.'" *United States v. Hernandez*, 921 F.2d 1569, 1578 (11th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2271, 114 L.Ed.2d 722 (1991). "If the jury cannot keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to each, severance should be granted." *United States v. Carrazana*, 921 F.2d 1557, 1567 (11th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 191, 116 L.Ed.2d 152 *and cert. denied*, — U.S. —, 112 S.Ct. 269, 116 L.Ed.2d 221 (1991). Thus, Trupei must show that he suffered compelling prejudice due to a jury confused by hearing two defendants tried simultaneously. This is a heavy burden, and one which mere conclusory allegations cannot carry.

■■ Trupei asserts that since Hogan was charged and tried for offenses in which he was not involved, Trupei has suffered substantial prejudice warranting reversal. However, when conspirators are tried together, the fact that some offenses are unrelated to others does not establish prejudice where the complaining defendant conspired with the co-defendant who is subject to the additional charges. *See Hernandez*, 921 F.2d at 1578–79. Because Trupei has not demonstrated that he suffered compelling prejudice by being tried with Hogan, his claim of error fails. We find that the district court did not abuse its discretion by denying Trupei's motion to sever.

## V. AUTHENTICATION OF TRANSCRIPTS

■■ Trupei's final assignment of error is the admission of transcripts of audio tapes containing recorded conversations between the undercover detectives and Hogan. Trupei argues that the predicate foundation for the admission of these transcripts was insufficient. He more narrowly insists that one of these necessary predi-

cates is testimony of each person who prepared the transcripts as to their accuracy. Since that testimony is lacking, Trupei seeks a reversal.

In support of his claim that each officer who prepared a transcript must testify as to the accuracy of that transcript, Trupei cites two Eighth Circuit cases. *United States v. Willis,* 774 F.2d 258, 259 (8th Cir.1985); *United States v. Bentley,* 706 F.2d 1498, 1507 (8th Cir.1983), *cert. denied,* 464 U.S. 830, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983), *and cert. denied,* 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984). Those cases noted the value of, but did not require, authentication by the officer who prepared the transcripts. They did not hold that testimony from each officer who prepared a transcript as to its accuracy is a prerequisite to admission of transcripts of recorded conversations, and Trupei has not cited any authority from any court, let alone from this Circuit, that establishes such a requirement.

 A defendant unsatisfied with the accuracy of a transcript is not without recourse. The law of this Circuit permits a defendant skeptical of a transcript of a recorded conversation to prepare and submit his own transcript. A procedure has been established for these circumstances:

> Initially, the district court and the parties should make an effort to produce an "official" or "stipulated" transcript, one which satisfies all sides. If such an "official" transcript cannot be produced, then each side should produce its own version of a transcript or its own version of the disputed portions. In addition, each side may put on evidence supporting the accuracy of its version or challenging the accuracy of the other side's version. Since the jury must always reconcile the discrepancies in the transcript(s) against the recording itself, the district court need not listen to the tape or decide whether a transcript is accurate before the transcript is given to the jury and the recording is played.

*United States v. Wilson,* 578 F.2d 67, 69–70 (5th Cir.1978). *See also United States v. Rosenthal,* 793 F.2d 1214, 1237–38 (11th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987). A district court need not find that the transcript is perfectly accurate prior to its admission, and a defendant's remedy for alleged inaccuracies is to offer his own transcript with proof as to why it is the better one. In this case each transcript was authenticated by either a party to the telephone conversation or meeting to which it pertains or someone who had monitored the recorded conversation. Since Trupei made no attempt to offer his own transcript, and since he points to no inaccuracies in the transcripts, his claim of error must fail.

Having reviewed both defendants' claims of error, and finding that none of them has merit, both convictions are AFFIRMED.