**UNITED STATES of America, Plaintiff,**

v.

**Clark HOUSH, Defendant.**

**No. 99–20046–01–JWL.**

United States District Court, D. Kansas.

Feb. 11, 2000.

Brent I. Anderson, Office of U.S. Atty., Kansas City, KS, for U.S.

Michael L. Harris., Office of Fed. Public Defender, Kansas City, KS, for Clark Dean Housh.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

The sole issue before the court is whether defendant is competent to stand trial. On December 16, 1999, the court held a competency hearing pursuant to 18 U.S.C. § 4241. After hearing expert testimony from both sides, the court granted the parties leave to brief the issue of defendant's competency. Defendant has submitted his brief (Doc. 32), and the government has responded (Doc. 33). The court is therefore prepared to rule. For the

reasons stated below, the court finds defendant competent to stand trial.

## I. Background

On June 1, 1999, defendant was indicted for bank robbery, car jacking, use of a firearm in a crime of violence, and felon in possession of a firearm. Thereafter, defense counsel orally raised the issue of defendant's competence in a hearing before Magistrate Judge Rushfelt. As a result, Judge Rushfelt issued an order continuing the omnibus hearing and arraignment of defendant in order to give defendant an opportunity to be evaluated by a psychologist specializing in neuropsychological testing (Doc. 12). Judge Rushfelt's order recognized that defendant had sustained head injuries in two automobile accidents, the first occurring on October 13, 1997 and the second occurring on May 21, 1999.

On June 28, 1999, Dr. Lisa Lewis, PhD. met with defendant for approximately two hours and performed a number of neuropsychological tests (Tr. at 26). The tests led Dr. Lewis to conclude that defendant had a "moderately severe, generalized brain dysfunction with greater impairment of the verbal functions mediated by the left cerebral hemisphere." *See* Lewis Report at 4. This brain dysfunction was, in all probability, the result of the first automobile accident; it was later exacerbated by the second automobile accident. *See id.* Moreover, Dr. Lewis opined that defendant's deficits resulting from his brain dysfunction, as well as preexisting language deficits, would limit defendant's ability to participate meaningfully in his own defense. *See id.* Specifically, Dr. Lewis found that defendant has a poor memory, difficulty expressing himself and comprehending what others are communicating to him, and questionable ability to make decisions on his own behalf. *See id.*

Following receipt of Dr. Lewis' report, the government requested (Doc. 24), and

the court granted (Doc. 26), an independent psychological evaluation of defendant. From September 16, 1999 through October 12, 1999, defendant was confined at the United States Medical Center in Springfield, Missouri. During that time, defendant was observed and evaluated by Dr. Robert Denney, Psy.D., a neuropsychologist certified in forensic psychology. Tests performed by Dr. Denney led him to conclude that defendant has a mild neurocognitive disorder related to brain trauma, but not rising to the level of dementia. *See* Denney Report at 26 and Tr. at 47. Specifically, Dr. Denny found that defendant had short term memory problems and word-finding difficulties. *See* Denney Report at 17, 29. On the other hand, Dr. Denney reported that defendant could recall issues discussed at earlier interviews and had no difficulty communicating, even on complex issues. *See id.* Ultimately, Dr. Denney concluded that defendant is competent to stand trial, provided that reasonable accommodations are made. *See id.* at 29.

The court held a competency hearing on December 16, 1999. At that time, Dr. Lewis and Dr. Denney testified to substantially the same findings discussed in their individual reports. Both psychologists are in agreement that defendant suffers from a "definitive and well documented history of traumatic brain injury," caused by the morbid softening of the left temporal parietal region of his brain. Tr. at 62–63. The psychologists and parties disagree, however, as to the effect of that brain injury on defendant's competency to stand trial. *See* Tr. at 115. Based on its review of the psychologists' reports and testimony, the parties' papers, and case law, the court finds defendant competent.[1]

## II. Legal Standard

■ If the court finds by a preponderance of the evidence that a defendant is

---

1. On the day following the December 16, 1999 hearing, the court attended a courthouse holiday luncheon where he was seated at a table with a United States Deputy Marshal and a paralegal from the Federal Public Defenders Office. At that time, the Deputy Marshal volunteered that he believed defendant to

mentally incompetent, that defendant may not stand trial. *See* 18 U.S.C. § 4241. The two-prong test for competency was originally set forth by the Supreme Court in *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960): "the test must be (1) whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and (2) whether he has a rational as well as factual understanding of the proceedings against him." *See also Lafferty v. Cook,* 949 F.2d 1546, 1550 (10th Cir.1991) (quoting and adopting the *Dusky* test); *United States v. Williams,* 113 F.3d 1155, 1159 (10th Cir. 1997) (same). In a later case, the Court noted that the criminal prosecution of an incompetent person offends due process, stating: "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subject to a trial." *Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

## III. Discussion

■ Defendant appears to concede, and the court agrees, that the second prong of the *Dusky* test is met—defendant is sufficiently competent to understand the proceedings against him.[2] Thus, the only question before the court is whether defendant has the ability to consult with his lawyer with a "reasonable degree of rational understanding." The court finds by a preponderance of the evidence that defendant has such ability.

As an initial matter, the court notes that defendant's head injury alone is not enough to render him incompetent if the *Dusky* standard is met. *See Crail v. United States,* 430 F.2d 459, 460–61 (10th Cir.1970) (upholding finding of competency where defendant who suffered from head injuries in jail failed to show that he did not have the ability to consult with his lawyer). Unfortunately, few reported Tenth Circuit cases have given meaning to the "rational understanding" phraseology used by the *Dusky* Court, especially cases with facts similar to those in this case. For example, the Tenth Circuit interpreted "rational understanding" in *Lafferty* by reviewing the record of Dusky's competency hearing. 949 F.2d at 1551. The court concluded that "a defendant lacks the requisite rational understanding if his mental condition precludes him from perceiving accurately, interpreting, and/or responding appropriately to the world around him." *Id. Lafferty,* however, involved a defendant who claimed that God directed his

be competent. The court immediately informed the Deputy Marshal that his comment was inappropriate and ended the conversation. The court now discloses this comment for the purpose of noting that it had absolutely no bearing on the court's finding of competency.

2. Defendant's papers never specifically claim that he is unable to understand the nature and consequences of the suit against him. Rather, they focus on whether defendant is able to assist in his own defense. *See* Defendant's Motion for Competency Hearing at 3 (asking the court to "determine whether Defendant has the present ability to effectively assist counsel in the preparation of his defense."); Defendant's Brief at 1, 5, & 7 (structuring argument around the first prong of the *Dusky* test). The court agrees that the second

prong of the *Dusky* test is met. Defendant's psychologist, Dr. Lewis, did not opine in her report, nor in oral testimony, that defendant is unable to understand, factually and rationally, the proceedings against him. *See* Lewis Report at 4 (concluding that defendant's deficits are likely to limit his capacity to meaningfully participate in his own defense); Tr. at 17 (testimony opining that defendant lacked competence because he could not meaningfully participate in his own defense). Moreover, Dr. Denney, reported that defendant both recalled the events that led to the current charges being filed and understood the possible consequences of those charges, recognizing that he could face thirty years in prison. *See* Denney Report at 28. Defendant was further able to articulate the role of the judge, jury, witnesses, prosecuting attorney, and defense attorney. *See id.*

criminal actions and that "the examining doctors, the court system and personnel, and his own lawyer were part of a corrupt man-made order."[3] *Id.* at 1552. In this case, the defendant's mental defects clearly do not alter his perception of reality to such a great extent. Dr. Denney testified that while under observation at the Medical Center in Springfield, defendant functioned well in open population. *See* Tr. at 60. Defendant quickly learned the rules of the ward, caused no disruptions, related well with staff and patients, navigated the tunnels of the building, and was consistently cooperative and pleasant.[4] *See id.* and Denney Report at 17, 19. In face-to-face interviews with Dr. Denney, defendant demonstrated good attention and concentration skills, his speech was normal in content and form, and he demonstrated no difficulty communicating, even when discussing complex issues.[5] *See* Denney Report at 19. The question remains, however, whether defendant's other deficits render him incompetent despite his grasp on reality.

Defendant argues that his deficits are very similar to those which supported a finding of incompetence in *United States v. Helmsley,* 733 F.Supp. 600 (S.D.N.Y.1989). In *Helmsley,* the defendant was an 80 year old man who had suffered from a number of strokes which caused substantial brain damage. *See id.* at 602, 604. Expert testimony revealed that the defendant suffered from marked slowness of thought processing, real word-finding deficits, significant memory difficulties, alertness problems, and difficulties in reasoning and problem solving. *See id.* While defendant here suffered similar deficits, the court declines to follow *Helmsley* for a number of reasons.

First, the court does not find that defendant's deficits reach the level of severity of those exhibited by the defendant in *Helmsley.* In regard to defendant's memory, tests performed by both Dr. Lewis and Dr. Denney revealed that defendant does have memory problems, but neither doctor deemed them "severe." *See* Denney Report at 29; Lewis Report at 3. Moreover, the length of Dr. Denney's evaluation allowed him to observe defendant's "real-world" memory. Dr. Denney reported that defendant was able to recall information discussed in previous interviews, was able to discuss his life history in sufficient detail, and was able "to recall events in question that led up to his current charges without much difficulty." *See*

---

**3.** The Tenth Circuit struck down the district court's finding of competency based on the district court's failure to "proceed under a proper understanding of the due process requirements set out in *Dusky.*" 949 F.2d at 1556.

**4.** The facts in this case also distinguish it from a number of cases cited in defendant's brief. *United States v. Hemsi,* 901 F.2d 293, 294 (2nd Cir.1990), involved a defendant, similar to the one in *Lafferty,* who did not have an accurate perception of reality. Among other things, the defendant testified that when he visited Buddhist temples the monks embraced him because he had a "golden aura." *Id.* at 294 (upholding a finding of incompetence). *United States v. Schaffer,* 433 F.2d 928 (5th Cir.1970), is inapplicable because it involved a defendant with back injuries who was deemed *physically* competent to stand trial. Finally, *United States v. Williams,* 113 F.3d 1155 (10th Cir.1997) is distinguishable for two reasons. First, the defendant's alleged incompetence was based on a display of be-

havior much different from the description of the current defendant's cooperative behavior. Williams made continuous outbursts in court, interrupted the judge and attorneys, and openly defied court orders. Second, the stage of the proceeding, and thus the legal standard applied, was different. The Circuit remanded the case on a finding that a *reasonable judge* would have held a competency hearing. *See id.* at 1160. The court applies cases below which it believes are closer on point to the facts in this case.

**5.** Dr. Lewis' testimony and report also did not identify defendant as having an altered perception of reality. The court finds Dr. Denny's report more helpful on this issue because he was able to observe defendant over a one month time period, whereas Dr. Lewis's single interview of defendant lasted approximately two hours. Significantly, Dr. Lewis testified that the only disagreement she had with Dr. Denney's report was his ultimate conclusion that defendant was competent. *See* Tr. at 19.

Denney Report at 4–6, 28–29. The court believes that these are the type of memory skills which will enable defendant to consult with his attorney with a reasonable degree of rational understanding.

Defendant is an active individual who does not suffer from alertness problems. Dr. Denney reported that defendant was alert and routinely participated in recreational activities at the medical center, including providing vocal accompaniment to guitar players. *See* Denney Report at 17, 19. Dr. Lewis also reported that during her interview defendant was fully cooperative and exhibited effort in performing every task presented to him. *See* Lewis Report at 3. Furthermore, defendant is only moderately impaired in his ability to think logically and abstractly. *See id.* at 19. Although a test performed by Dr. Lewis indicated that defendant's rate of information processing was below normal, *see id.* at 3, Dr. Denney found that defendant could understand complex directions and "consistently demonstrated no signs of psychosis." *See* Denney Report at 19, 24. The court is thus convinced that defendant sufficiently meets the *Dusky* "rational understanding" standard.

Second, while persuasive, *Helmsley* is not binding authority. The court is therefore more inclined to follow a recent, though unpublished, decision of the Tenth Circuit which is factually similar to this case. In *United States v. Davis* the defendant also suffered brain damage as a result of an automobile accident. 1999 WL 29160, 166 F.3d 1222 (10th Cir. Jan. 26, 1999). Tests revealed that the defendant's brain damage inhibited his information processing abilities and left him with memory limitations. *See id.* at *5. Despite these deficits, the court upheld a finding of competency based on an application of the *Dusky* test. *See id.* at *5–6. Similarly, in this case defendant's two automobile accidents left him with memory and information processing deficits, as discussed above. In like manner, however, the court has found defendant competent under the *Dusky* test.

Third, while defendant's deficits do not render him incompetent, the court is willing to provide reasonable accommodations to aid defendant at the trial. Defendant argues that the accommodations suggested by Dr. Denney will confuse the roles of client and attorney; specifically, defense counsel will be given too much power over determinations which must be voluntarily made by his client. *See* Defendant's Brief at 7 and Tr. at 85–93. The court disagrees. While the Tenth Circuit has not addressed the issue in this context, other circuits have. For example, in *United States v. Glover,* 596 F.2d 857, 864–65 (9th Cir.1979), the defendant had an intelligence level that fell at the lowest 1% of society, had memory problems, and suffered from a short attention span. Experts opined that the defendant would only be competent to stand trial if questions, terms, and proceedings were explained to him in very simple terms, using concrete examples. *See id.* at 865. The Ninth Circuit upheld a finding of competence, stating: "The fact that a defendant might not understand the proceedings unless they are explained to him in simple language would put an additional burden upon counsel, but certainly does not establish that the defendant is incompetent to stand trial." *Id.* at 867. *See also United States v. Butterfly,* 1995 WL 729484, 72 F.3d 136 (9th Cir. Dec.7, 1995) (despite expert testimony that defendant's mental defects would prevent him from being able to interpret witness testimony, defendant was found competent where the court "promised to proceed slowly and provide frequent breaks so that Ronald's attorney could communicate with him and explain the proceedings to him.") Likewise, the court is persuaded by the reasoning of the Eleventh Circuit which, when faced with this same argument, stated: "Even perfectly competent defendants often do not fully comprehend the intricacies of some of the defensive theories offered by their lawyers. That level of comprehension is not a requirement of competency." *See United States v. Hogan,* 986 F.2d 1364, 1373 (11th

Cir.1993). The court will address specific accommodations which will be made in this case at the limine conference to be held before trial.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant be found competent to stand trial.

**IT IS FURTHER ORDERED BY THE COURT THAT** this case be set for trial to a jury to commence on March 13, 2000 at 1:30 p.m. Any motions in limine shall be filed no later than March 6, 2000. Any responses thereto shall be filed by March 9, 2000. A limine conference shall be set at 10:30 a.m. on March 13, 2000.

**IT IS SO ORDERED.**