[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 26, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-10205

_____

D. C. Docket No. 06-00251-CR-2-RDP-PWG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DON RUDELL RANSOM,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(March 26, 2008)**

Before BIRCH and FAY, Circuit Judges and RODGERS,* District Judge.

--------

*Honorable Margaret C. Rodgers, United States District Judge for the Northern District of Florida, sitting by designation.

PER CURIAM:

After a jury trial, Don Ransom appeals his conviction for aiding and abetting possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2.  After review, we AFFIRM.

## I.  BACKGROUND

Ransom and two co-defendants were arrested and charged after two confidential informants ("CIs"), Dwight Graham and Glen Gault, conducted two controlled drug buys from Ransom while under the supervision of Drug Enforcement Agency ("DEA") agents.[1]  Both the controlled buys and the telephone conversations arranging them were recorded by DEA agents.

Gault, one of the CIs, had a pending state rape charge and was awaiting trial. Prior to Ransom's trial, the government filed a motion in limine, seeking to exclude any evidence as to Gault's rape charge.  The government's motion argued that the rape charge was irrelevant and might mislead or confuse the jury.  The motion represented that "[w]ith respect to the pending rape case, no law enforcement officer has promised or assured the confidential informant of any

---

[1]One co-defendant, Cedric Orlando Green, drove Ransom to the first controlled buy. Green pled not guilty and was tried and convicted along with Ransom.  The other co-defendant, Richard Kidd, drove Ransom to the second controlled buy.  Kidd pled guilty and testified as a government witness as part of a negotiated plea agreement.

2

favorable treatment, consideration, leniency, or immunity." The district court granted the government's motion in limine.

During trial, DEA special agent Bret Hamilton testified that CI Dwight Graham had agreed to cooperate in return for a reduced sentence in his state marijuana trafficking charge. Graham introduced DEA agents to his friend Gault, and Gault agreed to help authorities because of his friendship with Graham. Gault knew Ransom and could arrange to purchase drugs from him.

During cross examination, Special Agent Hamilton testified that it is uncommon for a person such as Gault to serve as a CI in order to help another person receive a lighter sentence. Hamilton had seen such cooperation approximately six times in the last eleven years. Both Graham and Gault testified that they had been friends since high school and that Gault had participated in the controlled buys to help Graham receive a lesser sentence. Gault further testified that he had participated for no other reason than to help Graham obtain a reduced sentence. Ransom's counsel asked Gault whether he was cooperating on other cases in order to help himself, and Gault responded that he was not doing it to help himself, but to help Graham.

During trial, the government sought to introduce both audiotapes and transcripts of the controlled buys and the telephone conversations setting them up.

Ransom objected to the transcripts, arguing that the tapes were hard to understand and that the transcripts could not be matched up with the tapes "word for word." During a side-bar conference, the government noted that the tapes and transcripts had been provided to defense counsel prior to trial being set and that defense counsel had had an opportunity to make alternative tapes and transcripts.

The district court overruled the objection, but allowed a standing objection to the transcripts. The district court also gave a limiting instruction before each transcript was admitted. That instruction advised the jury that the transcript was offered as an aid and that, if the jury believed that the transcript did not accurately reflect the substance of the audiotape, the jury should disregard the transcript and consider as evidence only what was on the tape.

The jury found Ransom guilty. The district court sentenced Ransom to 120 months' imprisonment. Ransom appealed.

## II. DISCUSSION

### A. Motion in Limine

On appeal, Ransom argues that the district court erred in limiting his cross-examination of Gault regarding his pending state rape charge.

The district court's discretionary authority to limit cross examination is constrained by the Sixth Amendment requirement that an accused be permitted to

confront the witnesses against him. United States v. Garcia, 13 F.3d 1464, 1468 (11th Cir. 1994). "The right to full cross-examination increases in importance where the witness is a chief government witness" and "requires a defendant to have some opportunity to show bias on the part of a prosecution witness." United States v. Arias-Izquerdo, 449 F.3d 1168, 1178 (11th Cir.), cert. denied, ___ U.S. ___, 127 S. Ct. 521 (2006), and ___ U.S. ___, 127 S. Ct. 996 (2007), and ___ U.S. ___, 127 S. Ct. 1001 (2007), and ___ U.S. ___, 127 S. Ct. 1041 (2007).

A defendant's right to cross-examination is not unlimited. United States v. Diaz, 26 F.3d 1533, 1539 (11th Cir. 1994). Rather, "once there is sufficient cross-examination to satisfy the Confrontation Clause, further questioning is within the district court's discretion." Id. "The test for the Confrontation Clause is whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross- examination." Id. at 1539-40.

We review a district court's decision to limit cross-examination for an abuse of discretion. United States v. Baptista-Rodriguez, 17 F.3d 1354, 1371 (11th Cir. 1994). Furthermore, we will not reverse a district court's erroneous decision to limit cross-examination if that error was harmless. United States v. Edwards, 211 F.3d 1355, 1359 (11th Cir. 2000). Under the harmless error analysis, "[t]he correct

5

inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438 (1986).  Factors to consider in determining whether the error was harmless include: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Id.

Even assuming arguendo that the district court erred in restricting Ransom's cross-examination of Gault, we conclude that any error was harmless.[2]  Although Gault's testimony was not unimportant, it was only one piece of the government's case against Ransom.  For example, the government presented testimony from

_____

[2]We recognize that the government argues that the district court did not err in excluding evidence of Gault's pending rape case.  The government emphasizes that its motion in limine represented that no promise of favorable treatment had been made to Gault.  Ransom presented no evidence to support his claim that Gault's cooperation and testimony were motivated by an expectation of favorable treatment in his state rape case.  Nor did Ransom present evidence showing that the government had the ability to influence Gault's state rape case. See Diaz, 26 F.3d at 1540 (noting that federal defendant failed to show that government could grant leniency in prosecution witness's state criminal action).  Special Agent Hamilton, Graham and Gault all testified at trial that Gault did not receive any personal benefit from his cooperation other than helping his longtime friend, Graham, receive a more lenient sentence.  In response, Ransom argues that defense counsel must be permitted to cross-examine prosecution "star" witnesses as to their motive for testifying and possible bias.  We need not reach this issue because the alleged error is harmless in any event.

6

Graham, the other CI who participated in the controlled buys, and Richard Kidd, a co-defendant who drove Ransom to the second controlled buy. In addition to these two witnesses' testimony, the government presented audiotapes of the phone conversations arranging the buys and of the buys themselves. Finally, Special Agent Hamilton, who supervised the controlled buys, testified about the transactions. Special Agent Hamilton overheard the telephone conversations between Gault and Ransom arranging the deals, monitored the second controlled buy in real time via a transmitter and observed Gault and Graham while they conducted both deals with Ransom. All of these witnesses and evidence established Ransom's guilt. Moreover, Gault's testimony was entirely consistent with the evidence.[3]

Considering the strength of the government's case, the presence of corroborating testimony and evidence on the material points of Gault's testimony and the lesser significance of Gault's testimony given all the other evidence the government presented, we conclude beyond a reasonable doubt that, even if Gault

---

[3]Ransom argues that the district court also limited his cross examination of Richard Kidd, who drove Ransom to the second drug deal. However, neither the government's motion in limine nor the district court's ruling addressed evidence of Kidd's pending federal charges. In any event, Ransom cross-examined Kidd regarding his plea agreement and the possibility that Kidd might obtain a downward departure if he assisted the government.

had testified that he had a pending state rape case, the result of Ransom's trial would have been the same.[4]

**B.    Admission of Transcripts**

Ransom also argues that the district court erred in admitting the government's transcripts of the recorded conversations between him and Gault.[5]  A jury may use transcripts as an aid to understanding the content and meaning of tape recordings.  United States v. Cruz, 765 F.2d 1020, 1023 (11th Cir. 1985).  If the parties are unable to produce a stipulated transcript, "each side should produce its own version of a transcript or its own version of the disputed portions."  United States v. Hogan, 986 F.2d 1364, 1376 (11th Cir. 1993).[6]  Each party may also "put on evidence supporting the accuracy of its version or challenging the accuracy of the other side's version."  Id.  It is not error to allow a transcript to go into the jury room unless the defendant demonstrates that the transcript either is inaccurate or

---

[4]Ransom also complains that the district court refused to permit him to question Gault about his state rape charge outside the presence of the jury.  Our review of the record revealed no evidence that Ransom ever asked for a hearing outside the jury's presence, let alone that the district court denied such a request.

[5]For the first time on appeal, Ransom argues that the district court's admission of the transcripts violated various evidentiary rules, including Federal Rules of Evidence 403, 602, 604, 702 and 801.  Ransom cites no authority for his evidentiary arguments, and we conclude that they are meritless.

[6]Neither at trial nor on appeal has Ransom argued that the recordings were so unintelligible that they should be excluded or that it was impossible to prepare a competing defense transcript from them.

causes him specific prejudice.  United States v. Williford, 764 F.2d 1493, 1503 (11th Cir. 1985).

Although given enough time to do so,[7] Ransom did not offer his own transcripts or his own version of any disputed portions of the audiotapes.  Indeed, Ransom does not point to any inaccuracies in the government's transcripts or articulate any specific prejudice he suffered.[8]  Furthermore, before admitting each transcript into evidence, the district court gave a limiting jury instruction explaining the limited purpose for which the transcripts were to be used.  Under these circumstances, there is no error.  See Hogan, 986 F.2d at 1376 (concluding that defendant's claim of error must fail when he does not offer his own transcript and does not point out inaccuracies in the government's transcript).  The district

_____

[7]Ransom claims that he did not have sufficient opportunity to prepare independent transcripts because he received the government's tapes and transcript two weeks before trial and his court-appointed counsel had limited time and resources.  However, Ransom's counsel did not raise this concern with the district court and remained silent when his co-defendant's counsel agreed with the district court that they had been given the tapes and transcripts "some time prior" to trial and had the opportunity to make alternative tapes and transcripts.  See United States v. Wilson, 578 F.3d 67, 70 (5th Cir. 1978) ("Once we have concluded that the defendants could have challenged specific portions of the government's transcript or prepared an alternative version, it follows that they cannot be heard to complain on appeal because they failed to take advantage of their trial opportunity.").

[8]To the contrary, Special Agent Hamilton testified that he was involved in preparing the government's transcripts, that they accurately represented what was on the audiotapes and that both Gault and Graham had reviewed the tapes and transcripts and verified their accuracy.

court did not abuse its discretion in admitting the audiotapes and transcripts and providing them to the jury with a limiting instruction.[9]

**AFFIRMED.**

---

[9]We do not consider Ransom's ineffective assistance of counsel claims because the record was not sufficiently developed in the district court to permit review on direct appeal. <u>See</u> <u>United States v. Bender</u>, 290 F.3d 1279, 1284 (11th Cir. 2002).